

June 9th, 2023

From: Ilene Marie Wahpeta
#70523-408
FCI Waseca
Federal Correctional Institution
P.O. Box 1731
Waseca, MN   56093

To: Honorable Judge Snow
United States Court House
401 W. Washington Street, Room 130
Phoenix, AZ   85003

**CR-17-00041-003-PHX-GMS**

Dear Honorable Judge Snow;

This is an Emergency Motion for Compassionate Release being filed pro se in accordance with 18 U.S.C. 3582(c)(1)(A) as amended by the First Step Act of 2018 on the basis of:

(1) I was the victim  of sexual assault while in the custody of the Federal Bureau of Prisons. I have reported to the appropriate authorities including the Associate Warden McIntosh and will comply with further reporting to the FBI, and the OIG and the U.S. Attorney's Office.

(2) I am assisting in bringing the perpetrator to justice and cooperating with authorities in reporting the details of my sexual assaults so that the officer can be criminally  charged.

(3) The First Step Act of 2018 (the "FSA") amended the language of section 3582(c)(1)(A). Before the FSA, only the Director of the Bureau of Prisons could make a motion for the court to reduce a defendant's sentence based on extraordinary and compelling reasons. It is widely acknowledged that the BOP fell short it's gatekeeper role and that as a result, too few inmates were granted Compassionate Release. See, e.g. U.S. Department of Justice, Office of Inspector General, Evaluation and Inspection Division, Federal Bureau of Prisons' Program  (April 2013) https://oig.justice.gov/reports/2013/e1306.pdf. ("We found that the existing BOP Compassionate Release Program has been poorly managed and implemented inconsistently, likely resulting in eligible inmates not being considered for release and in terminally inmates dying before their requests were being decided."). Shon Hopwood, Second Looks and Second Chances, 41 Cardozo L. REV. 83, 105-06 (2019); William W. Berry III, Extraordinary nd Compelling, a Re-Examination of the Justifications for Compassionate Release, 68 MD. L. REV. 850, 868 (2009)(noting that in the 1990's, 0.01% of inmates annually were granted Compassionate Release).

Congress passed the FSA against that backdrop. The FSA altered section 3582(c)(1)(A) in part to increase the use of Compassionate Release. See 164 Cong. Rec. H10358 (daily ed. Dec. 20, 2018)(Titling changes to section 3582(c)(1)(A) as "Increasing the Use and Transparency of Compassionate Release."

In particular, the FSA amended section 3582(c)(1)(A) to allow a defendant him- or herself to bring a motion for Compassionate Release. Section 3582(c) now reads in relevant part:

(c) Modification of an imposed term of imprisonment. The Court may not modify a term of imprisonment once it has been imposed except that - (1) in any case -

(A) the Court, upon the motion of the Director of the Bureau Prisons, or upon a motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without  conditions that does not exceed the original portion of the original term of imprisonment ), after considering the factors set forth in section 3553(a) to the extent they are applicable.

Your Honor, I respectfully request that your Honorable Court impose a term of supervised release with special conditions that does not exceed the original portion of the original term of imprisonment which will mitigate any risks of dangerousness that the government might have, based on the nature of my charge. The special conditions would include vital and necessary mental health counseling and substance use treatment.

Your Honor, I submit to you the facts in which I reported and will testify to which are the basis for my Compassionate Release request:

Please see attached a copy of the Administrative Remedy SENSITIVE 10 that I submitted with the help of my Attorney to Regional Office of the Federal Bureau of Prisons, 400 State Avenue, Tower II, Suite 800, Kansas City, KS 66101:

"Please accept this submission regarding rapes, sexual abuse, sexual assaults, and sexual harassment that I suffered by former kitchen officers of FCI Dublin, known as Andrew Jones and Patrick Pool, from in or about March 2019 through in or about June 2022 and prior and subsequent thereto, and related personal injuries and civil rights violations. United States, acting through it's agents, servants, contractors, and employees allegedly working within the scope of employment of BOP and/or FCI Dublin, disregarded and/or neglected an excessive risk that Jones and Pool were predators-in-uniform who repeatedly sexually abused inmates including myself. Due to BOP and/or FCI Dublin personnel's wrongful acts and/or omissions.

Jones and Pool were given authority as correctional officers and/or kitchen foremen supervising inmates working at the kitchen, and were emboldened to abuse that authority to sexually assault, harass, coerce, threaten, accost and molest his victims including myself on numerous occasions. Jones and Pool were also allowed, permitted, condoned or encouraged to use disciplinary measures such as unjust SHU placement to coerce, threaten and blackmail me into complying with, and keeping silent about, their and other kitchen officer's sexual abuse. BOP and/or FCI Dublin personnel created, maintained and perpetuated a pervasive culture of staff-on-inmate sexual abuse throughout FCI Dublin which further allowed, permitted, condoned, encouraged or emboldened Jones and Pool to sexually abuse me. Jones and Pool repeatedly isolated themselves with me at FCI Dublin without proper monitoring, supervision or oversight, despite prior complaints and indications regarding their sexual abuse, which were well known to other BOP and/or FCI Dublin personnel. BOP and/or FCI Dublin personnel repeatedly failed to acknowledge, address, investigate and remedy suspicion or allegations of sexual and/or physical abuse by officers including Jones and Pool who were abusing numerous inmates at FCI Dublin. As a result, Jones and Pool sexually and physically abused me on many occasions as a result of which I suffered sever trauma, emotional distress, physical injuries and other permanent injuries and damages. I have also suffered and continue to suffer retaliation, abuse and harassment by other BOP personnel because of my attempts to report the sexual abuse. I have also been denied proper psychological care, treatment and support, further amplifying my injuries and damages. As such, I seek remedy to the fullest extent allowed under this Administrative Remedy process, including any available declaratory , injunctive, compensatory remedies.

While incarcerated at FCI Dublin in California, between the dates of March 2019 and June of 2022, I was sexually assaulted by Officer Andrew Jones who worked in the Food Service Department. I worked in the Food Service Department for four (4) years. He was sexually abusing other women (Alejandra Naranjo, my co-worker, p.m. shift; and, Reyna Cardoza, a.m. shift in Food Services).

Officer Jones used his authority to manipulate me. He bribed, coerced and threatened me. He ordered Door Dash to the prison and gave me liquor (bottle of Snapple jars filled with Ciroc in it). He threatened to write shots that would "stick". He threatened to acquire my belongings (in my housing unit).

The first time (November 2021) he forced me to have sex it was my birthday and he had told me that he wanted to celebrate my birthday with me. He brought in frozen pizzas from outside and brought ingredients to make strawberry short cake. After we ate, he told me that he wanted me to go to the back with him. He brought me in to the staff bathroom- it's located in the back of Food Services. In that restroom, there is a washing machine. He locked the door. He told me to pull my pants down. he bent me over the washing machine and had sex with me. He did not use protection.

Then, the second time, (January 2022) he had gotten aggressive because he was mad. One of the other women he was sexually abusing came to dinner with hickies on her neck and he became enraged. He went crazy and told me "I have needs. It's your turn." He let everyone leave from Food Services and then he took me to the back and forced me to have sex. He told me to pull my pants down and forced me to have sex. He did not use protection.

I was too afraid to report. I was put into the SHU March 16th, 2022, because other women reported him. I was told, "I was under investigation". The SIS man stated that he was not at liberty to say anything. I was held in the SHU for 90 days. When the SIS Officer first came and got me and put me in the SHU, he told me he would return in two (2) days to tell me why he was holding me there. Two days turned into two months. I had NO COMMUNICATION and no opportunity to report. I was asking Lieutenants where he was and there was no assistance. The FBI and the DOJ came and wanted to talk to me and I was too afraid. I was full of fear because I had been locked in the SHU so long. After 90 days, the DOJ and FBI were not able to get any information out of me. The SIS Officer stated, "If you aren't going to take this man down, get ready to transfer." Four (4) days later, I was designated and a week later I was on the next bus and gone. I was transferred to FCI Waseca.

The Officer Pool, in 2021, while I was working in the kitchen, he took me into the office and inside the office is a "hot room" and he told me "touch this". He instructed my hand towards his crotch. This was very disgusting and it was against my will.

Now, I am at FCI Waseca and I have reported everything and will cooperate with the FBI and DOJ in any way possible. I spoken to Associate Warden, PREA Coordinator, Mr. McIntosh. The Psychology Department has told me that I can speak with CADA and speak with a Psychology Department Representative, Mr. Wunderleich.

I am also represented by: Attorney Jaehyun Oh, Jacob D. Fuchsberg Law Firm, 3 Park Avenue, Suite 3700, New York, NY 10016. The same Law Firm also represents another female who was incarcerated with me at FCI Dublin and who also was sexually abused and filed a motion in front of Honorable Judge Riggs, Las Cruces, New Mexico. Her name is Alejandra Arias. The government conceded that extraordinary and compelling reasons exists based on Ms. Arias being a victim of sexual assault at the same facility in which she was housed together with me. They do not oppose the modification of her sentence to time served. They also find her testimony to be credible.

Your Honor, I would like to cite a case: United States v. Rashidah Brice, Criminal Action No. 13-CR-206-2, LEXIS 225732, E.D. Penn. December 15th, 2022; Ms. Brice was sentenced to 185 months of incarceration after pleading guilty to one (1) count of sex trafficking of a minor by force and two (2) counts of attempted sex trafficking. She sought Compassionate Release based under extraordinary and compelling reasons due to:

1. She was sexually assaulted by correctional officer while serving her sentence;
2. She cooperated in a successful prosecution of the correctional officer;
3. Both parents of her two (2) minor children are presently incarcerated.

Ms. Brice asked that her sentence be reduced to time served and that she be released. The Court granted her motion and reduced her sentence by 30 months., While Brice was serving her sentence, she was sexually assaulted by a correctional officer who forced her to engage in nonconsensual oral sex. Press release issued by the government described the criminal sexual conduct by the officer against inmates in this facility. At the hearing for Brice's motion for Compassionate release, Brice testified that the correctional officer assaulted her in "several places" around the correctional facility.

The second officer sexually  assaulted her but was not officially prosecutor.

The parties do not dispute that a correctional officer sexually assaulted multiple inmates at the facility where Brice was housed, before he was eventually prosecuted. The government's press release also reflects the two other correctional employees who held the title of Lieutenant were simultaneously charged with sexually assaulting inmates at the same facility. Brice stated in a declaration attached to her motion, in this case, that she initially did not feel she could report this abuse because the officer's supervising Lieutenant was also an abuser.  Brice first testified at a hearing before the Judge that inmates who reported sexual assaults were placed in solitary confinement purportedly for reporting inmate's protection.  So, Brice stated that she has seen two or three different girls placed in solitary confinement for talking  about the  sexual  assaults on the phone.

Brice reacted to her trauma by agreeing to assist in the prosecution of her assailant supports a finding that  Brice disproportionate suffering while in custody "warrants a reduction in her sentence" and that these circumstance are extraordinary and compelling.

Despite facing tremendous adversity both in her personal life before prison and at the hands of the prison guard, Brice responded by preventing more inmates from being abused, including cooperating in an investigation regarding individuals who had authority over her and could have retaliated against her.  I also note that Congress and Department of Justice have determined that "a prison rape often goes unreported", and "retaliation for reporting instances of sexual abuse and for cooperating in sexual abuse investigations is a serous concern in correctional facilities." Department of Justice National Standards to Prevent, Detect and Respond to Prison Rape, June 20th, 2012.

Brice entered prison at a young age after being abused by her codefendant and members of her family, and once there, again suffered abuse this time at the hands of government officials responsible for her safety in what was not an isolated incident but a pattern of misconduct. Brice then cooperated with other government officials to prevent the abuse from continuing. For these reasons, I find that Brice has shown "extraordinary and compelling reasons warranting a reduction in her sentence." Her motion for Compassionate Release was GRANTED and her sentence was reduced by thirty (30) months.

Similarly, Your Honor, I had a traumatic childhood. In my PSR, it documents the trauma of my childhood. I also entered prison at a young age. I was abused by my co-defendant and it states that in my PSR.  Because I want to lead a successful life after serving my sentence, I know have much more mental health treatment that I need and cannot acquire that while in the custody of the Federal Bureau of Prisons.

U.S Senators Jon Ossoff (D - Ga. Chair) and Ron Johnson (R - Wisc. Ranking Member) of the United States Senate Permanent Subcommittee on Investigations Committee on Homeland Security and Governmental Affairs released a 68-page report on sexual abuse by Bureau employees.

One of the conclusions of the report was that BOP employees sexually abused female prisoners in at least 2/3 (19 out of 29) facilities of the federal prisons that have held women over the past decade. 12-12-22 PSA Staff Report Sexual Abuse of Female Inmates in Federal Prisons.pdf.(Senate.gov)

On December 16th, 2022, the CHICAGO TRIBUNE headlined the article: "Feds: Prisoner was Sexually Assaulted at Chicago Jail Despite Repeated Pleas". And, on Tuesday, December 20th, 2022, USA TODAY headlined a newspaper article: "Rape Club' Shows Failure on Misconduct Behind Bars" with a sub-title: "Feds Strategy Discounts Prisoner Complaints" and the article stated:

"A jury recently convicted a former warden of a women's prison in Dublin, California, also called the "Rape Club" because of it's reputation for sexual violence and eight (8) charges including having sex with an incarcerated victim and abusive sexual conduct.

"Who are you going to believe?" James Riley, Ray Garcia's attorney asked jurors during closing arguments according to local news outlet KTVU. "A law enforcement officer with an impeccable record or a convicted felon?"

And, this is why its time to admit that the Prison Rape Elimination Act in effect for two decades is not working; the system doesn't take victim's accounts as credible. Rampant sexual violence is hardly limited to California.

In Senate report released last Tuesday, investigators found that 19 of 29 facilities, federal employees sexually abused female prisoners over the past decade.

The investigation uncovered documents demonstrating that guards confessed to having sexual contact with prisoners, but were never prosecuted.

Former inmates of Hawaii are suing the State for 53 rapes in three (3) years.

In Clark, County, Indiana, one (1) jail guard allegedly sold the keys to the women's facility to male inmates for $1,000.00.

It's not clear how many people this happened to; we have lost our grip on the extent of the problem. National standards to prevent, detect, and respond to Prison Rape went into effect a decade ago, but if has been several years since the first set of prisoner sexual assault data was released. The report showed sexual misconduct behind bars had tripled from 2011 to 2015.

Statisticians say the increase of prison sexual misconduct of the result of improved attitudes in reporting and they could be right. During the pandemic, however, the Bureau of Justice statistics paused collecting the data of how many assaults were reported, how many were substantiated, and how many were hung in "unsubstantiated limbo". But, it expects to resume next year.

We should watch the number of unsubstantiated reports. Meaning they have not been proven, but they haven't been disproven which are about 42% of allegations.

We need to know whether "credibility discount" keeps these reports from being included in the substantiated category. An unreasonable credibility test is baked into the Prison Rape Elimination Act. It requires every investigation to assess inmate credibility even when there is other collaborating evidence.

Your Honor, these facts and occurrences within the Federal Bureau of Prisons (BOP) are reprehensible. The basis for this motion for Compassionate Release is the fact that I was a victim to a substantiated PREA violation and have suffered unjustly. I am cooperating in the successful prosecution of this "predator in uniform" and even though I am not receiving adequate counseling and mental health care for the trauma I endured. However, I will be able to acquire vital and necessary mental health care and psychological services as a special conditions to the term of supervised release in accordance with 18 U.S.C.

3582(c)(1)(A).

Additionally, I want to assert that I have done a substantial amount of rehabilitation during my incarceration. Attached to this motion is a list of completed classes and programs nd certificates showing my obligation to heal form the trauma of my childhood and my past and overcome any criminal behavior that was rooted in my substance abuse. However, due to extreme short staffing, while in the custody of the BOP and specifically at FCI Waseca, I am not able to acquire much more rehabilitation and wait lists for psychological service and treatment programs project out over years.

The DOJ issued on Wednesday, May 10th, 2023, a report from the Inspector General's (OIG) Office titled: 'Inspection of the Federal Bureau of Prisons' Federal Correction Institution Waseca'. The report focused on the Conditions of the Facility and Staffing Challenges at the Federal correction Institution  and documented the inability for the integrity of the First Step Act provision mandated by Federal Law - 18 U.S.C. 3632.

A surprise inspection of the federal women's prison in Waseca uncovered "many significant issues", according to a Department of Justice report released Wednesday, May 10th, 2023.

This was the first unannounced inspection under the DOJ Office of the Inspector General's new inspection program, which is expected to include inspections at other federal prisons across the country in the coming months.

The on-site inspection happened January 30th, 2023 through February 5th, 2023 with a team on nine (9) making physical observations, interviewing staff and inmates, reviewing security camera footage and collecting records.

According to the report, the prison is running with only 67% of it's correctional service positions filled, leading to the temporary assignment of non-correctional officer personnel into correctional officer positions, a practice known as augmentation.

Correctional Officer posts were filled most commonly with personnel from the Facilities Department, Unit Team and Education Department. The report stated that wait lists for the First Step Act evidence based recidivism reducing educational classes and programs often were in excess of 300+ people and projected out over years.

The full DOJ report showing the Federal Bureau of Prisons' deficiencies on the ability to provide safety, rehabilitation and more is found at:

https://oig.justice.gov/reports/inspection-federal-bureau-prisons-federal-correctional-institution-waseca

In my situation, Your Honor, retaliation was something I feared. And, my fears came true because I was put in the SHU to prevent me from reporting. They said it was for my safety. But, they walked this officer off the compound BEFORE they put me in the SHU. I believe they did not want me to report to any investigators. And, I was afraid of what would happen if I did. After two (2) months in the SHU, I still chose not to report out of fear, so they transferred me based on "programming" and I was sent to FCI Waseca, over 1,300 miles away from my home and family. The First Step Act ensures that we should be placed within 500 miles of our family. My family is in Arizona.

In the above detailed case, Ms. Brice cooperated in the prosecution of the correctional officer who sexually  assaulted her. According to Ms. Brice's testimony before the Judge, she was interviewed by investigators who then returned to the  facility where she was instructed to tell no one about the investigation. The United States Attorney's Office that handled the prosecution of the correctional officer stated in a letter that Ms. Brice "assisted the government's investigations, including by providing information during interviews, testimony before the grand jury and was available to testify at trial had the case not been resolved by guilty plea." The correctional officer pled guilty and was sentenced to a term of imprisonment. Ms. Brice represents and the Government agrees, that other inmates who cooperated in the correctional officer's prosecution received reduction in their sentences pursuant to the Government's motions under Federal Rule of Criminal Procedures 35(b). The Government did not file such a motion with respect for Ms. Brice.

Your Honor, I am willing and have offered through my Attorney, Jaehyun Oh, Fuchsberg Law Firm, New York, to assist in the prosecution of the correctional officer and will provide accurate and detailed information to assist the successful investigation.

Ms. Brice argues that when I sentenced her to 185 months, it could not have been possibly contemplated that she would be sexually abused at the hands of prison guards. Ms. Brice therefore submits that what she experienced in prison was more than what was intended to punish her for her crimes. The Government contends that what Ms. Brice has suffered is shocking nd tragic.

The assault Ms. Brice experienced is far beyond the ordinary "derelictions of the part of prison officials" that a defendant (or sentencing Judge) can anticipate at the time of sentencing. Ms. Brice's suffering is compounded by the fact that she entered prison with trauma of having been raped by her own father and physically abused by her own co-defendant. Thus, failing to take Ms. Brice's sexual assault into account risks "enhancing, to a disproportionate degree, the level of punishment contemplated to be experienced by" Ms. Brice as a sentence for her crimes.

This is also not the case of an isolated or aberrant act of indiscretion on the part of a single correctional officer. The officer in question abused multiple inmates before he was originally caught and prosecuted and multiple employees of the correctional facility were complicit in the abuse. This repeated acts of violence make the prisons' failure to protect Ms. Brice's safety while in custody particularly egregious.

Ms. Brice next grounds of reduction in sentence is her cooperation in the prosecution of the correctional officer who abused her, which Ms. Brice submits exposed her to a risk of retaliation. Ms. Brice and the Government disagree as to whether this ground may even be considered on a motion under 3582(c). Her motion was GRANTED.

My home plan is to live with my mother in Scottsdale, Arizona and then into my own home. Her address is: 5108 North Alma School Road, Scottsdale, AZ 85256. Her phone Number (480) 362-9268. I will seek mental health counseling and gainful employment and I will comply with the rules and regulations of the U.S. Probation Office.

Your Honor, I have exhausted my administrative rights (see document attached to the Warden of my facility); and, I have provided an extraordinary and compelling warranting reduction in my sentence including the fact that I have been a victim of sexual assault and that has been reported to authorities; and additionally I have provided the website link for the Department of Justice, Office of Inspector General's Report on the deficiencies at FCI Waseca and within the Bureau of Prisons to confirm that I will never be able to acquire the vital and necessary mental health care treatment that I need; and, the 3553(a) factor WEIGH in favor of my release.

I am deeply remorseful for my crime, Your Honor. Please see the attached letter I am submitting with this motion. I committed a serious crime. In my PSI, it is documented that my co-defendant physically abused me and had a miscarriage prior to coming to prison because of my codefendant having abused me severely resulting in my miscarriage. However, I was involved and played a part in this crime due to my inability to draw boundaries. I have completed a substantial amount of rehabilitation and am stronger today and want you to know that I have plans for my life to do good and succeed.

I have served over half of my sentence. Considering my initiative to seek rehabilitative treatment for my substance abuse issues while incarcerated, my satisfactory behavior while incarcerated, as well as the supervised release special conditions imposed with this motion, additional incarceration is not necessary "to protect the public from further crimes of the defendant." 18 U.S.C. 3553(a)(2)(C). My obligation to comply with the terms of supervised release would best "provide the defendant with ... correctional treatment in the most effective manner." 18 U.S.C. 3553(a)(2)(D).

Incarceration is not the only "kind of sentence available." 18 U.S.C. 3553(a)(3). A noncustodial sentence will limit my liberty interests through supervised release and I will face harsh consequences if I violate the special conditions activated upon my release from BOP custody. Those special conditions promote respect for the law, protect the public and do not constitute any approval of my past criminal conduct.

I pray that your Honorable Court finds Compassionate Release is appropriate at this time, as I will not pose a danger to the public.

Respectfully,

*Uline W*

May 19th, 2023

From: Ilene Marie Wahpeta
      #70523-408
      FCI Waseca
      Federal Correctional Institution
      P.O. Box 1731
      Waseca, MN  56093

To: Honorable Judge Snow
    Federal District Court
    401 West Washington Street, Room 130
    Phoenix, AZ  85003

Re: Letter of Remorse

Dear Honorable Judge Snow;

As I sit here today reflecting on my past, I know it was not good.  But, my past does not define who I am today. I've taken this time to take as much action as needed to change my life. Getting to the pinpoint of my past trauma:

As a child, I was abused by my mother... the person who was supposed to protect and love me, but instead she neglected me. I had so much pain and anger inside from the countless years of abuse. My father abused drugs and disappeared when I was twelve years old.  I was in a lot pain and felt abandoned and I didn't care about anything, except my next "high".  I didn't want to feel the pain and shame of what was placed upon me. I now know I was wrong on so many levels. I had no right to take part in the taking another person's life or inflicting the trauma on my victims.  And for that I am truly sorry.  Realizing that my thoughts are what led me to behave a certain way and working on that I'm able to change my thinking and self-awareness on my thoughts and behaviors.

I've completed (RDAP) Residential Drug Abuse Treatment, Trauma In Life, Seeking Safety, Boundaries, Financial Planning, and Barista Certification. I'm currently on the waiting list for Resolving Problems, Anger Management, and the Certified Nursing Assistant. I have tried to learn as many skills and worked to train to be better in life. In RDAP I've taken leadership roles such as being a "Big Sister/Mentor" - and I mentor peers who have had similar struggles or still are struggling in the program. I've been the Chairperson of the 'Grief Class' which is where I have forgiven myself and my mother.  My relationship with my mother is now phenomenal. I was a victim that started victimizing others, but now that I know better I will do better to my fullest potential.

I have children that I did not raise, because of the life I chose to live. I'm now walking with integrity, living a crime-free and drug-free life and will continue to do so as I leave here. I have a sober support system outside.  My family has taken it upon themselves to hold me accountable of my actions and have agreed to lead me in the right way, support, and uplift me through out my life.

While working on my past, I've also had a lot of time to sit and think of the trauma I've inflicted on my victims.  Especially the parents of the man who lost his life. I know there's nothing that I can do to bring back their son, but I am deeply sorry for my past actions. I knew from the start what I was doing was not the right way to go - but, at the time, my mind was clouded by drugs and I was not in my right state of mind.

Now sober for over (6) six years, I'm very remorseful and that's something have to live with for the rest of my life. These last few years, I have had a drastic shift in who I am and how I approach life.

I've had a lot of time to think about  how my actions have impacted other's lives. I want to be a better version of me and be a better example to my children, and I no longer want to be a menace to society. I want to be productive and make a difference in life for myself and for those around me. I am eternally remorseful for hurting the families and the community. I hope and pray that you will see me for the woman I am today and not the horrible individual I was for so many years. I was lost, but now I am found.  I want to thank you for your time and consideration.

Respectfully Submitted,

Ilene Wahpeta

Ullene-W

TRULINCS 70523408 - WAHPETA, ILENE MARIE - Unit: WAS-E-A

---------------------------------------------------------------------------------------------------------------

FROM: 70523408
TO: Warden
SUBJECT: ***Request to Staff*** WAHPETA, ILENE, Reg# 70523408, WAS-E-A
DATE: 05/09/2023 08:20:11 PM

To: Request for Compassionate Release
Inmate Work Assignment: orderly

Mr. Segal
i am requesting Compassionate Release in accordance with 18 U.S.C. 3582 (c)(1)(A) and as amended by the First Step Act of
2018 on the basis of (1) i was a victim of sexual assaults', sexual abuse and sexual harassments,(PREA) when i was housed at
FCI Dublin
I have a valid home plan and it is in my file in my Unit Team's office. i have completed all my assessment needs. and will
comply with conditions of my supervised release. i will comply  with the rules and regulation of the U.S Probations Office.
Respectfully,
Ilene Wahpeta

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 70523-408 | Risk Level Inmate....: R-LW |
| Inmate Name | General Level......: R-LW (14) |
|   Last.........: WAHPETA | Violent Level......: R-LW (2) |
|   First........: ILENE | Security Level Inmate: MINIMUM |
|   Middle.......: MARIE | Security Level Facl..: LOW |
|   Suffix.......: | Responsible Facility.: WAS |
| Gender.........: FEMALE | Start Incarceration..: 10/30/2017 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 39 | 18 | 3 |
| Violent Offense (PATTERN) | TRUE | 1 | 3 |
| Criminal History Points | 1 | 0 | 0 |
| History of Escapes | 3 | 9 | 3 |
| History of Violence | 0 | 0 | 0 |
| Education Score | HighSchoolDegreeOrGED | -6 | -2 |
| Drug Program Status | NoDAPCompletion | 0 | 0 |
| All Incident Reports (120 Months) | 2 | 2 | 0 |
| Serious Incident Reports (120 Months) | 1 | 0 | 0 |
| Time Since Last Incident Report | 14 | 0 | 0 |
| Time Since Last Serious Incident Report | 34 | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 18 | -8 | -4 |
| Work Programs | 1 | -2 | -1 |
| | Total | 14 | 2 |



# Certificate of Completion

This certificate is awarded to

*Ilene Wahpeta*

In recognition of completing the
Floor Machine Training Program

April 11, 2018

Mr. Blassingame                         Date
Environmental & Safety Compliance Specialist

# Certificate of Completion

*This certifies that*

## Ilene Wahpeta

*Has satisfactorily completed*

# ULTRAKEY 6 TYPING

*Consisting of 20 Hours of Training*

This certificate is hereby issued this 31st day of August, 2018

**VOCATIONAL TRAINING BUSINESS**
Dublin, California

*Mr. Tibunsay- VT Instructor*

# Federal Correctional Institution Dublin



This is to certify that

## Ilene Wahpeta

Has successfully completed the Boundaries Class

On April 24, 2019



# Certificate of Completion

AWARDED TO

## Ilene Wahpeta

For successfully completing 8 hours of course study in

## Container Gardening

S. Garcia, ACE Coordinator

6/6/19
Date




# ≈ Certificate of Achievement ≈

### This certifies that

*Ilene Wahpeta*

### has satisfactorily completed

STEP AHEAD

### Consisting of ___10___ Hours of Training

**This certificate is hereby issued this __12th__ day of __JUNE__ , 20__19__**



_____                    _Reentry Coordinator_____

# Certificate of Completion

## Certifying that

## Ilene Wahpeta

### Has successfully completed

# ACE BARISTA

A course consisting of 42 Hours of Training

On this 26th day of September, 2019

Ms. Garcia
ACE Coordination

Mr. Young
Assistant Food Service Administrator

# Certificate of Completion

**AWARDED TO**

## Ilene Wahpeta

for successfully completing an <u>8</u> hour ACE class in

# Finance Planning I

O. Figueroa, ACE Coordinator

**December 30, 2019**
Date

# Certificate of Completion

awarded to:

## Ilene Wahpeta

for completion of Trauma in Life
at FCI-Dublin on February 16, 2021

Dr. Townsend, Resolve
Program Coordinator

# Certificate of Completion



## is presented to

### Ilene Wahpeta

## for



### Completion of Seeking Safety

A FSA Psychology Services Group at FCI DUBLIN



**Signature**

September 15, 2021

**Date**

# *Certificate of Achievement*

### Presented to

**Ilene Wahpeta**
**For successfully completing**
**the residential portion of the**

## Residential Drug Abuse Treatment Program

*This milestone, while significant, is not the completion of the treatment requirements. Ilene Wahpeta is hereby eligible to move forward to the follow-up and/or community treatment components of RDAP.*

*June 13, 2023*

_____
J. Plendl
Drug Treatment Specialist

_____
M. Swanson, PhD.
Drug Abuse Program
Coordinator

**UNITED STATES OF AMERICA, Plaintiff, v. RASHIDAH BRICE, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**2022 U.S. Dist. LEXIS 225732**
**Criminal Action No. 13-cr-206-2**
**December 15, 2022, Decided**
**December 15, 2022, Filed**

**Counsel**          {2022 U.S. Dist. LEXIS 1}U.S. Attorneys: ERIC L. GIBSON, LEAD
ATTORNEY, UNITED STATES ATTORNEY'S OFFICE EASTERN DISTRICT OF
PENNSYLVANIA, PHILADELPHIA, PA USA; MELANIE BABB WILMOTH, MICHELLE
MORGAN, U.S. ATTORNEY'S OFFICE, PHILADELPHIA, PA USA.

**Judges:** MITCHELL S. GOLDBERG, J.

**Opinion**

**Opinion by:**          MITCHELL S. GOLDBERG

**Opinion**

## MEMORANDUM OPINION

### Goldberg, J.

This case presents a difficult question under the First Step Act for compassionate release and
involves balancing the disturbing conduct underlying Defendant Rashidah Brice's conviction with the
extraordinary and compelling events that occurred after sentence was imposed. For reasons
explained below, I will partially grant Brice's motion and reduce her sentence by 30 months but will
not order her release as she has requested. Although Brice's circumstances are extraordinary and
compelling and warrant a reduction from her original sentence, due to the serious and violent nature
of her crimes and their effect on the victims, I find that releasing Brice now would not be consistent
with the sentencing factors of 18 U.S.C. § 3553(a).

### I. FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2013, Defendant Rashidah Brice pled guilty to one count of sex trafficking of a minor
by force and two counts of attempted sex trafficking{2022 U.S. Dist. LEXIS 2} by force in violation of
18 U.S.C. § 1591. I thereafter sentenced Brice to 185 months of incarceration. Brice now moves for
compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and
compelling reasons." Brice argues that her sentence should be reduced because: (1) she was
sexually assaulted by a correctional officer while serving her sentence; (2) she cooperated in the
successful prosecution of the correctional officer; and (3) both parents of her two minor children are
presently incarcerated. Brice asks that her sentence be reduced to time served and that she be
released. The Government opposes this Motion.1

### A. Brice's Criminal Conduct

Brice and her codefendant, Christian Womack, forced or attempted to force three individuals to have
sex with strangers in exchange for money. The following facts are taken from the pre-sentence
investigation report (PSR) prepared by the Probation Department.

DISHOT                                                                    1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

Brice pled guilty to trafficking three victims, which the parties identify as Minor 1, Person 2, and Person 3. The most egregious facts concern Minor 1, then 17, who was found by Brice and Womack alone at a casino in Atlantic City. (PSR ¶¶ 13-14.) The two invited Minor 1 to participate in a scheme wherein Minor{2022 U.S. Dist. LEXIS 3} 1 would pose as a prostitute and steal customers' money rather than have sex with them. (Id. ¶ 14.) But when Minor 1 found her first customer, Brice demanded that Minor 1 have sex with the man, threatening that Womack would "beat the shit out of [Minor 1]" if she did not comply and punching Minor 1 in the mouth. Minor 1 then had sex with the man, which Brice recorded on video. (Id. ¶ 15.)

Over the next few weeks, Brice andWomack took Minor 1 to multiple locations and forced Minor 1 to have sex with over a dozen strangers. Brice forced Minor 1 to use cocaine so that Minor 1 could stay awake during these events. At one point, Brice held a gun to Minor 1's head. (Womack put a gun to Minor 1's head multiple times.) Brice also forced Minor 1 to perform oral sex on her while Brice recorded a video. (Id. ¶¶ 16-21.) Minor 1 escaped when a stranger took pity on Minor 1 and gave her $50 for a taxi. (Id. ¶ 20.)

Minor 1 stated that she would "never be the same" as a result of the abuse Brice and Womack inflicted on her. (N.T., 10/22/14, 38.) Minor 1 spent the three years following Brice's crimes at a shelter for child victims of sex trafficking, where she saw her family only briefly and did not{2022 U.S. Dist. LEXIS 4} attend high school with her peers. (Id.) She stated that she is unable to open up to people or trust them, that she is "forever . . . haunted by the feeling of being unclean and impure," and that she lives in fear. (Id. at 37.)

Brice's two other victims were adult women. After meeting Person 2 at a casino in Atlantic City, Brice and Womack used pictures from Person 2's Facebook profile to make a Backpage.com posting advertising Person 2 for "dates." (PSR ¶¶ 22-26.) Person 2 became upset and left. (Id. ¶ 26.) As Person 2 left, Brice and Womack threatened to kill her. (Id. ¶ 27.)

Brice and Womack met Person 3 through a mutual friend and attempted to advertise dates with her through Backpage.com. Person 3 ran away when Womack attempted to have sex with Person 3 while she was sleeping. (Id. ¶ 36.) Brice and Womack then threatened to kill her. (Id. ¶¶ 37-38.) Person 3 stated that the memory of the crime still caused her to lose sleep, freeze up, and feel sick. (N.T., 10/22/14, 35-36.)

### B. The Original Sentence

When I sentenced Brice, I noted that her crimes were "heinous" and "horrifying" and that the harm to the three victims was severe. (N.T., 10/22/14, 22, 64-65.) I also observed that Brice{2022 U.S. Dist. LEXIS 5} had had a "horrible upbringing," including being raped by her own father. (Id. at 65.) Brice was also abused by her codefendant Womack. During the trafficking of Minor 1, Brice attempted to leave Womack but Womack beat Brice until she stayed. (PSR ¶ 16.) Brice's aunt testified that Womack had control over Brice. (N.T., 10/22/14, 42-43.) I determined that Brice was remorseful, and also considered that Brice was 22 years old at the time of the offense conduct and 24 on the day of sentencing. (Id. at 65-66.)

Brice's original guideline range was 292 to 365 months. (N.T., 10/22/14, 24.) Following a downward departure based on the Government's motion under U.S.S.G. § 5K1.1, Brice's guideline range was reduced to 168 to 210 months. I determined that a sentence within this range was appropriate, placing significant weight on the seriousness of Brice's crimes.

### C. Brice's Subsequent Sexual Assault by a Correctional Officer While Incarcerated

The parties do not dispute that while Brice was serving her sentence, she was sexually assaulted by

## DISHOT

2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

a correctional officer, who forced her to engage in nonconsensual oral sex. (N.T., 7/20/22, 15.) A press release issued by the Government described criminal sexual conduct by**{2022 U.S. Dist. LEXIS 6}** this officer against inmates at the facility. (Brice's Ex. D.) At the hearing on Brice's motion for compassionate release, Brice testified that the correctional officer assaulted her in "several places" around the correctional facility, and that a second officer sexually assaulted her but was not prosecuted. (N.T., 7/20/22, 37.)

The parties do not dispute that this correctional officer sexually assaulted multiple inmates at the facility where Brice was housed before he was eventually prosecuted. The Government's press release also reflects that two other correctional employees, who held the title of lieutenant, were simultaneously charged with sexually assaulting inmates at the same facility. Brice stated in a declaration attached to her motion in this case that she initially did not feel she could report this abuse because the officer's supervising lieutenant was also an abuser. (Brice's Ex. C ¶ 10.) Brice further testified at the hearing before me that inmates who reported sexual assault were placed in solitary confinement, purportedly for the reporting inmate's protection. (N.T., 7/20/22, 36.) Brice stated that she had seen "two or three different girls" placed in solitary confinement**{2022 U.S. Dist. LEXIS 7}** for talking about sexual assault over the phone. (N.T., 7/20/22, 38.)

#### D. Brice's Cooperation

Brice cooperated in the prosecution of the correctional officer who sexually assaulted her. According to Brice's testimony before me, she was interviewed by investigators, then returned to the facility, where she was instructed to tell no one of the investigation. (N.T., 7/20/22, 40.) The United States Attorney's Office that handled the prosecution of the correctional officer stated in a letter that Brice "assisted the government's investigation, including by providing information during interviews and in testimony before the grand jury, and was available to testify at trial, had the case not been resolved by guilty plea." (Brice's Ex. E.) The correctional officer pled guilty and was sentenced to a term of imprisonment.

Brice represents, and the Government agrees, that other inmates who cooperated in the correctional officer's prosecution received reductions in their sentences pursuant to the Government's motions under Federal Rule of Criminal Procedure 35(b). The Government did not file such a motion with this Court with respect to Brice.

#### E. Brice's Children

Brice and her codefendant Womack have two children together. Brice represents**{2022 U.S. Dist. LEXIS 8}** in her Motion that, because both she and Womack are currently incarcerated, Brice's mother is the children's legal guardian. In a letter attached to Brice's motion, Brice's mother states that one child has asthma and the other has a G6PD (an enzyme) deficiency and food allergies. The mother's letter further states that she suffers from asthma, back pain, and carpal tunnel syndrome. For that reason, the children are currently staying with Brice's sister. (Brice's Ex. B.)

#### F. Brice's Conduct in Prison

The Government attaches Brice's disciplinary record from her time in BOP custody. Brice has numerous disciplinary infractions; however, most were minor such as feigning illness or hoarding medication. In one incident, Brice fought with another inmate, pushing the other inmate against a wall and putting her hands on the other inmate's neck.2

### II. LEGAL STANDARD

A motion by a defendant to reduce her sentence pursuant to 18 U.S.C. § 3582(c) must meet two requirements. See United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021). First, the defendant

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

must demonstrate that "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). Second, the defendant must show that a reduction is "supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable."**{2022 U.S. Dist. LEXIS 9}** Andrews, 12 F.4th at 258.

## III. DISCUSSION

### A. Extraordinary and Compelling Reasons

To evaluate whether Brice is entitled to a reduction in sentence, I must first determine whether "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). Brice argues that the following circumstances present extraordinary and compelling reasons: (1) her sexual assault while in custody, (2) her assistance in bringing the perpetrator to justice, and (3) the fact that her minor children currently do not have a parent who is not in custody. The Government disagrees that these circumstances are extraordinary and compelling.

### 1. Sexual Assault by a Correctional Officer

I begin with Brice's sexual assault. Brice argues that when I sentenced her to 185 months, it could not have possibly been contemplated that she would be sexually abused at the hands of prison guards. Brice therefore submits that what she experienced in prison was more than was intended to punish her for her crimes. While the Government does not dispute that what Brice suffered is shocking and tragic, the Government argues that it is not an "extraordinary and compelling reason[] [that] warrant[s] . . . a reduction" in Brice's sentence.

In resolving this dispute,**{2022 U.S. Dist. LEXIS 10}** I find United States v. Mateo, 299 F. Supp. 2d 201 (S.D.N.Y. 2004), instructive. The defendant in Mateo sought a departure from a guidelines sentence at her initial sentencing based on the fact that she had been forced to undress in front of male prison guards and to give birth without medical attention. Id. at 211-12. The court applied a nine-level downward departure based on those circumstances. Id. at 212. The Mateo court first observed that some "derelictions on the part prison officials [are] to be expected as an incidence of the usual hardships associated with incarceration." Id. at 211. Thus, not every defendant who has an unpleasant experience in prison is entitled to a reduction in sentence. But when a defendant experiences a hardship that is "uniquely extraordinary, beyond the heartland of ordinary disparities," it risks "enhanc[ing], to a disproportionate degree, the level of punishment contemplated to be experienced by inmates . . . during the period of incarceration prescribed by the Guidelines[.]" Id. at 212.

Also instructive is United States v. Rodriguez, 213 F. Supp. 2d 1298 (M.D. Ala. 2002), which, like Mateo, involved a guidelines departure at an initial sentencing. The defendant in Rodriguez was raped by a correctional officer while awaiting sentencing, and the court granted a downward departure. Id. at 1302-03. As in Mateo, the court decided that failing to take the**{2022 U.S. Dist. LEXIS 11}** rape into account would "mete out a disproportionate punishment." Id. The Rodriguez court also found it significant that the rape was inflicted "at the hands of those who were responsible for [the defendant's] safety while awaiting sentencing." Id. "[T]hus the circumstance of awaiting sentencing, while not the legal cause of [the defendant's] assault, was a condition that allowed the assault to happen. In other words, the assault occurred on [the] court's watch." Id. at 1302.

Here, the sexual assault Brice experienced is far beyond the ordinary "derelictions on the part prison officials" that a defendant (or the sentencing judge) can anticipate at the time of sentencing. And Brice's suffering is compounded by the fact that she entered prison with the trauma of having been raped by her own father and physically abused by her codefendant. Thus, failing to take Brice's sexual assault into account risks "enhanc[ing], to a disproportionate degree, the level of punishment

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

contemplated to be experienced by" Brice as a sentence for her crimes.

This is also not a case of an isolated or aberrant act of indiscretion on the part of a single correctional officer. The officer in question abused multiple inmates before{2022 U.S. Dist. LEXIS. 12} he was eventually caught and prosecuted, and multiple employees of the correctional facility were complicit in the abuse. These repeated acts of violence make the prison's failure to protect Brice's safety while in custody particularly egregious.

The Government also argues that Mateo and Rodriguez do not apply to Brice's circumstances because the standard to reduce a sentence already imposed is higher than the standard to depart from the guidelines when imposing a sentence in the first instance. The Government is right about this, but both Mateo and Rodriguez found the circumstances to be "extraordinary," which is the same standard § 3582(c)(1)(A)(i) requires. In addition, the principle underlying those cases remains applicable after a sentence has been imposed-namely, that severe and extraordinary injury, inflicted by the government's own agents, can amount to disproportionate punishment.

The Government further urges me not to follow Mateo and Rodriguez because the defendants there had committed nonviolent crimes. I agree that this distinction is relevant, but it is only one factor in deciding Brice's motion. Brice's crimes are separate incidents and, while reprehensible, they do not minimize or make the sexual assault she experienced at the{2022 U.S. Dist. LEXIS 13} hands of a correctional officer less extraordinary or compelling.

## 2. Cooperation Against the Assailant

Brice's next ground for a reduction in sentence is her cooperation in the prosecution of the correctional officer who abused her, which Brice submits exposed her to a risk of retaliation. Brice and the Government disagree as to whether this ground may even be considered on a motion under § 3582(c).

The Third Circuit has held that cooperation cannot be the sole basis for a reduction in sentence under § 3582(c). United States v. Claude, 16 F.4th 422, 426-27 (3d Cir. 2021). To do so would undermine the policy of Federal Rule of Criminal Procedure 35(b), which states that it is the Government's prerogative to decide when cooperation is substantial enough to warrant a motion for reduction. See id. But the Third Circuit also stated that cooperation can be a "relevant factor" that may be considered on a motion for compassionate release so long as it is not the sole basis. Id. at 427. The Government urges me not to follow the Third Circuit's "dictum," relying, again, on the argument that to do so would undermine the Government's prerogative under Rule 35(b). The parties have not identified any other authority addressing whether cooperation may be considered among other factors in a motion under § 3582(c).

My consideration of Brice's cooperation{2022 U.S. Dist. LEXIS 14} as a relevant factor does not supplant the Government's prerogative under Rule 35(b). It is entirely appropriate for me to consider how Brice responded to suffering abuse at the hands of her prison guards. The "broad discretion" federal courts have "to consider all relevant information" at a "proceeding[] that may modify an original sentence" is "bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence." Concepcion v. United States, 142 S. Ct. 2389, 2398, 213 L. Ed. 2d 731 (2022). That Brice reacted to her trauma by agreeing to assist in the prosecution of her assailant supports a finding that Brice's disproportionate suffering while in custody "warrant[s] . . . a reduction" in her sentence and that these circumstances are extraordinary and compelling. Despite facing tremendous adversity both in her personal life before prison and at the hands of a prison guard, Brice responded by preventing more inmates from being abused, including cooperating in an investigation regarding individuals who had authority over her and could

## DISHOT

5

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

have retaliated against her. I also note that Congress and the Department of Justice have determined that "[p]rison rape often goes unreported," 34 U.S.C. § 30301(6), and "retaliation{2022 U.S. Dist. LEXIS 15} for reporting instances of sexual abuse and for cooperating with sexual abuse investigations is a serious concern in correctional facilities." Department of Justice, National Standards To Prevent, Detect, and Respond to Prison Rape, 77 F.R. 37106-01 (June 20, 2012).

The facts of this case are unusual, and a decision in Brice's favor would not suggest that a reduction is appropriate any time a defendant suffers an unforeseen tragedy or cooperates in a prosecution. Brice entered prison at a young age after being abused by her codefendant and members of her family, and, once there, again suffered abuse, this time at the hands of government officials responsible for her safety, in what was not an isolated incident but a pattern of misconduct. Brice then cooperated with other government officials to prevent the abuse from continuing. For these reasons, I find that Brice has shown "extraordinary and compelling reasons [that] warrant . . . a reduction" in her sentence.3

## B. § 3553(a) Factors

Even though Brice has shown "extraordinary and compelling" reasons to reduce her sentence, I may not grant a reduction unless I determine that it would be consistent with § 3553(a), which sets out the factors to be considered when imposing a sentence. Among those factors, the following are relevant here:

(1) the nature and circumstances of{2022 U.S. Dist. LEXIS 16} the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant[.]§ 3553(a)(1), (a)(2).

Applying those factors to Brice's circumstances requires weighing facts that are, in some sense, uncomparable. On one side of the weighing, Brice has suffered more than necessary to constitute "just punishment for the offense" she committed. But, under the law, I cannot consider Brice's suffering in isolation. As I noted when imposing Brice's sentence, Brice's crimes were "heinous" and "horrifying." (N.T., 10/22/14, at 64-65.) The lives of Brice's victims have been forever altered. Most strikingly, the minor victim will never overcome the trauma of being held captive for weeks by Brice andWomack while they forced her, sometimes at gunpoint, to have sex with strangers. And while Brice was not the leader in this operation, the facts reflect that she was an active participant.

Just as the sexual assault Brice suffered in prison cannot{2022 U.S. Dist. LEXIS 17} be undone, the harm inflicted on Brice's victims cannot be undone. It would not be fair to the victims to now release one of the defendants as compensation for the prison's failure to protect that defendant from harm in prison. The need to protect the public and promote respect for the law require that Brice continue to serve a significant period of incarceration.

When I sentenced Brice, I noted that a significant sentence was necessary, but I also observed that 168 months, the low end of the guideline range, would also be significant. I then imposed a sentence of 185 months. I will now reduce Brice's sentence to 155 months. I find that this sentence continues to reflect the seriousness of Brice's offense, promotes respect for the law, protects the public, and provides just punishment.

## DISHOT                                                   6

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

An appropriate order follows.

**ORDER**

**AND NOW**, this 15th day of December, 2022, upon consideration of Defendant Rashidah Brice's Motion to Reduce Sentence (ECF No. 340), the Government's response in opposition thereto (ECF No. 345), and Defendant Brice's reply (ECF No. 349), following an evidentiary hearing held on July 20, 2022, and for the reasons set forth in the accompanying memorandum opinion, it is hereby**{2022 U.S. Dist. LEXIS 18} ORDERED** that:

1. Defendant Brice's Motion to Reduce Sentence (ECF No. 340) is **GRANTED in part and DENIED in part**.

2. Defendant Brice's sentence of incarceration is reduced pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) from 185 months in the custody of the Bureau of Prisons to 155 months.

3. All other terms of Defendant Brice's sentence, including the period of supervised release and the imposition of a special assessment and restitution obligation, remain unchanged.

**BY THE COURT:**

*/s/ Mitchell S. Goldberg*

**MITCHELL S. GOLDBERG, J.**

**Footnotes**

1

I held an evidentiary hearing on July 20, 2022. The parties agreed to the consideration of the facts set out in the briefs and the admission of the exhibits attached to them. (N.T., 7/20/22, 5-6.)

2

The Government further contends that Brice engaged in witness tampering by telling other inmates that an individual was testifying against Brice's partner. To support this assertion, the Government offers only a heavily redacted page of notes from an FBI interview of the alleged witness. The witness's name is redacted and it is not stated whether the agents conducting the interview credited the witness's account. I find this incomplete information too unreliable to establish that the alleged witness tampering occurred and therefore it will not be considered.

3

Brice also argues that the fact that her minor children do not have a free parent and reside with Brice's mother and sister is an extraordinary and compelling reason warranting a reduction. As to this ground, I agree with the Government that, while this fact merits sympathy, it is not, standing alone, extraordinary and compelling. See United States v. Pereira, 272 F.3d 76, 81 (1st Cir. 2001) ("[I]t is the unfortunate norm that innocent family members suffer considerable hardship when a relative is incarcerated.").

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## prisoner complaints



**Chandra Bozelko**
Junior Board of the Women's
Prison Association

A jury recently convicted a former warden of a women's prison in Dublin, California – also called the "rape club" because of its reputation for sexual violence – of eight charges, including having sex with an incarcerated victim and abusive sexual contact.

"Who are you going to believe?" James Reilly, Ray Garcia's attorney, asked jurors during closing arguments, according to local news outlet KTVU. "(A) law enforcement officer with an impeccable record or a convicted felon?"

And this is why it's time to admit that the Prison Rape Elimination Act – in effect for two decades – is not working: The system doesn't take victims' accounts as credible.

Rampant sexual violence reporting is hardly limited to California:

● In a Senate report released last Tuesday, investigators found that in 19 of 29 facilities, federal employees sexually abused female prisoners over the past decade.

The investigation uncovered documents demonstrating that guards confessed to having sexual contact with prisoners but were never prosecuted.

● Former inmates in Hawaii are suing the state for 53 rapes in three years.

● In Clark County, Indiana, one jail guard allegedly sold the keys to the women's facility to male inmates for $1,000.

On Oct. 12, Inspector General Michael Horowitz wrote a memo to the newly appointed director of the Bureau of Prisons, Colette Peters, complaining about the bureau's policy of not relying on inmate statements "to make administrative misconduct findings and take disciplinary action against BOP employees, unless there is evidence aside from inmate testimony that independently establishes the misconduct."

of the abuse, conclusive forensic evidence or an admission of guilt. Apparently, when an incarcerated person complains of sexual harm, their word's no good.

It's not clear how many people this happens to; we've lost our grip on the extent of the problem. National standards to prevent, detect and respond to prison rape went into effect a decade ago, but it has been several years since the first set of prison sexual assault data was released. That report showed sexual misconduct behind bars had tripled from 2011 to 2015.

Statisticians say the increase of prison sexual misconduct is the result of improved attitudes about reporting, and they could be right. During the pandemic, however, the Bureau of Justice Statistics paused collecting the data – how many assaults were reported, how many were substantiated and how many hang in unsubstantiated limbo – but it expects to resume next year.

We should watch the number of unsubstantiated reports – meaning they haven't been proven but they haven't been disproven – which are about 42% of allegations. We need to know whether a "credibility discount" keeps these reports from being included in the substantiated category.

An unreasonable credibility test is baked into the Prison Rape Elimination Act. It requires every investigation to assess inmate credibility even when there's other corroborating evidence.

### Absurd credibility matrix

Corroborating evidence is rare, and the Department of Justice knew that when the standards were being drawn up. The Legal Aid Society warned the DOJ that inmate testimony was rarely relied upon. While that may leave only inmate credibility to consider and investigate, as a practical matter, those complaints may automatically be considered baseless.

The manual is clear that the complainant's status as an inmate cannot be the sole determinant of credibility, but this is exactly what the Bureau of Prisons is doing.



Former prison warden Ray Garcia, left, with lawyer James Reilly in Oakland, Calif. On Dec. 8, Garcia was convicted of eight counts involving sexually abusive conduct against three female inmates. JEFF CHIU/AP

### ABOUT THIS SERIES

This is part of a series by USA TODAY Opinion about police accountability and building safer communities. The project began in 2021 by examining qualified immunity and continues in 2022 by examining various ways to improve law enforcement. The project is made possible in part by a grant from Stand Together, which does not provide editorial input.

It's violating the law, as the inspector general's memo makes clear.

Even the way an individual's credibility is assessed is problematic.

Investigators determine an inmate's believability with a short list of data points – facts that "rape shield laws" would prevent from being disclosed at trial if the person weren't incarcerated.

Investigators are required by law to inquire into the claimant's history of other allegations, history of vulnerability (English-speaking proficiency, being transgender, etc.), history of other relevant reports including grievances, recent disciplinary infractions, and relationship with the suspect.

The Prison Rape Elimination Act's failings have focused attention on the

auditors, the hundreds of individuals trained and certified by the Department of Justice to review a facility's practices. *Many were certifying failing facilities as being compliant.*

A provision allowing auditors to be decertified when their reports don't match the conditions and practices within a prison was added to reform legislation. But that doesn't do anything to address the problem that prisoners are reporting sexual victimization and not being believed because of an antiquated and absurd credibility matrix that's part of the federal government's rape elimination strategy.

### Expand prison camera surveillance

A key bit of testimony from Garcia's trial was that a victim said the warden told her he knew exactly how to evade detection by surveillance cameras.

Video can corroborate inmate reports. But camera coverage in federal prisons is spotty, as the text of a congressional bill acknowledges. The Prison Camera Reform Act, which the House passed Wednesday and is now ready for President Joe Biden to sign, would require the Bureau of Prisons to submit a plan on how to expand and improve camera surveillance in these facilities within 90 days of enactment.

But this applies only to federal prisons, which house a mere 11% of inmates. Most incarcerated people won't get this protection, and they have no recourse because the *Prison Rape Elimination Act* doesn't mandate cameras.

States need to follow Congress' lead and expand camera coverage in all correctional facilities.

Shifting credibility can't be achieved by fiat power. That will take a longer time. But what can be done now is recognizing that the Prison Rape Elimination Act is not doing its job, and that we'll need new and different laws to check sexual violence in prisons.

*Chandra Bozelko, a columnist, is a member of the Junior Board of the Women's Prison Association, a 10 for 10 prize winner with the Canary Impact Fund and the author of "Up the River: An Anthology." Follow her on Twitter: @ChandraBozelko*

---

 **USA TODAY**   *"USA TODAY hopes to serve as a forum for better understanding and unity to help make the USA truly one nation." – Allen H. Neuharth, Founder, Sept. 15, 1982*

| | | | | | |
|---|---|---|---|---|---|
| Chairman and CEO<br>Gannett Co.<br>**MICHAEL<br>REED** | President, Gannett Media<br>Publisher, USA TODAY<br>**MARIBEL<br>PEREZ WADSWORTH** | President, News<br>Editor in Chief, USA TODAY<br>**NICOLE<br>CARROLL** | Chief Financial Officer:<br>**Doug Horne**<br>Senior Vice President/Local News and<br>Audience Development: **Amalie Nash** | Vice President/Executive Editor,<br>News & Initiatives: **Kristen Go**<br>Vice President/Executive Editor,<br>Sports: **Roxanna Scott** | Vice President/Executive Editor,<br>News & Investigations: **Jeff Taylor**<br>Opinion Editor:<br>**Kristen DelGuzzi** |



# Amendments to the Sentencing Guidelines (Preliminary)

# April 5, 2023

This document collects the amendments to the sentencing guidelines, policy statements, and commentary in the unofficial, "reader-friendly" form in which they were made available at the Commission's public meeting on April 5, 2023. As with all amendments that the Commission has voted to promulgate but has not yet officially submitted to Congress and the Federal Register, authority to make technical and conforming changes may be exercised and motions to reconsider may be made. Once the amendments have been submitted to Congress and the Federal Register, official text of the amendments as submitted will be posted on the Commission's website at www.ussc.gov and will be available in a forthcoming edition of the Federal Register. In addition, an updated "reader-friendly" version of the amendments will be posted on the Commission's website at www.ussc.gov.

## PROPOSED AMENDMENT: FIRST STEP ACT—REDUCTION IN TERM OF IMPRISONMENT UNDER 18 U.S.C. § 3582(c)(1)(A)

**Synopsis of Proposed Amendment**: This proposed amendment responds to the First Step Act of 2018, Pub. L. 115–391 (Dec. 21, 2018) ("First Step Act" or "Act"), which contains numerous provisions related to sentencing, prison programming, recidivism reduction efforts, and reentry procedures. Specifically, the sentencing reform provisions of the Act (1) amended the sentencing modification procedures set forth in 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to file a motion seeking a reduction in the defendant's term of imprisonment under certain circumstances; (2) reduced certain enhanced penalties imposed pursuant to 21 U.S.C. § 851 for some repeat offenders and changed the prior offenses that qualify for such enhanced penalties; (3) broadened the eligibility criteria of the "safety valve" provision at 18 U.S.C. § 3553(f); (4) limited the "stacking" of certain mandatory minimum penalties imposed under 18 U.S.C. § 924(c) for multiple offenses that involve using, carrying, possessing, brandishing, or discharging a firearm in furtherance of a crime of violence or drug trafficking offense; and (5) allowed for retroactive application of the Fair Sentencing Act of 2010. Revisions to the *Guidelines Manual* may be appropriate to implement the Act's changes to 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Reform Act of 1984 ("SRA") established a system of determinate sentencing, prohibiting a court from modifying a term of imprisonment once it had been imposed except in certain instances specified in section 3582(c) of title 18, United States Code. One of those instances is set forth in 18 U.S.C. § 3582(c)(1)(A), which authorizes a court to reduce the term of imprisonment of a defendant, after considering the factors in 18 U.S.C. § 3553(a) to the extent they are applicable, if "extraordinary and compelling reasons" warrant such a reduction or the defendant is at least 70 years of age and meets certain other criteria. Such a reduction must be consistent with applicable policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1).

Prior to the First Step Act, a court was authorized to grant a reduction in a defendant's term of imprisonment under section 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons." Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to file a motion seeking a sentence reduction after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Section 3582(c)(1)(A) does not define the phrase "extraordinary and compelling reasons." Instead, the SRA directs that "[t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Section 994(t) also directs that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* The SRA provides the Commission with the authority to set the policy regarding what reasons should qualify as "extraordinary and compelling reasons" for a sentence reduction under section 3582(c)(1)(A) and the courts with the authority to find that the "extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued

by the Sentencing Commission." *See* 28 U.S.C. §§ 994(a)(2)(C), 994(t), & 995(b); 18 U.S.C. § 3582(c)(1)(A).

The Commission implemented the section 994(t) directive by promulgating the policy statement at §1B1.13 (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). *See* U.S. Sent'g Comm'n, *Guidelines Manual*, §1B1.13 (Nov. 2021). Currently, §1B1.13 provides only for motions filed by the Director of the BOP and does not account for motions filed by a defendant under the amended statute. The policy statement describes the circumstances that constitute "extraordinary and compelling reasons" in the Commentary to §1B1.13. Application Note 1(A) through (C) provides for three categories of extraordinary and compelling reasons, *i.e.*, "Medical Condition of the Defendant," "Age of the Defendant," and "Family Circumstances." *See* USSG §1B1.13, comment. (n.1(A)–(C)). Application Note 1(D) provides that the Director of the BOP may determine whether there exists in a defendant's case "other reasons" that are extraordinary and compelling "other than, or in combination with," the reasons described in Application Note 1(A) through (C). USSG §1B1.13, comment. (n.1(D)).

The proposed amendment would implement the First Step Act's relevant provisions by amending §1B1.13 and its accompanying commentary. Specifically, the proposed amendment would revise the policy statement to reflect that 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes a defendant to file a motion seeking a sentence reduction.

The proposed amendment would also revise the list of "extraordinary and compelling reasons" in §1B1.13 in several ways.

First, the proposed amendment would move the list of extraordinary and compelling reasons from the Commentary to the guideline itself as a new subsection (b). The new subsection (b) would set forth the same three categories of extraordinary and compelling reasons currently found in Application Note 1(A) through (C) (with the revisions described below), add two new categories, and revise the "Other Reasons" category currently found in Application Note 1(D). New subsection (b) would also provide that extraordinary and compelling reasons exist under any of the circumstances, or a combination thereof, described in such categories.

Second, the proposed amendment would add two new subcategories to the "Medical Circumstances of the Defendant" category at new subsection (b)(1). The first new-subcategory is for a defendant suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. The other new subcategory is for a defendant who presents the following circumstances: (1) the defendant is housed at a correctional facility affected or at imminent risk of being affected by an ongoing outbreak of infectious disease or an ongoing public health emergency declared by the appropriate governmental authority; (2) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or ongoing public health emergency; and (3) such risk cannot be adequately mitigated in a timely manner.

Third, the proposed amendment would modify the "Family Circumstances" category at new subsection (b)(3) in three ways. First, the proposed amendment would revise the current subcategory relating to the death or incapacitation of the caregiver of a defendant's minor child by making it also applicable to a defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. Second, the proposed amendment would add a new subcategory to the "Family Circumstances" category for cases where a defendant's parent is incapacitated and the defendant would be the only available caregiver for the parent. Third, the proposed amendment would add a more general subcategory applicable if the defendant establishes that circumstances similar to those listed in the other subcategories of "Family Circumstances" exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. The new category would also provide a definition for the term "immediate family member."

Fourth, the proposed amendment would add a new category relating to a victim of abuse that applies to a defendant who, while in custody serving the term of imprisonment sought to be reduced, was a victim of (A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or (B) physical abuse resulting in serious bodily injury; that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. The new category would also provide that the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

Fifth, the proposed amendment would revise the "Other Reasons" category currently found in Application Note 1(D) and expand the scope of the category to apply to all motions filed under 18 U.S.C. § 3582(c)(1)(A), regardless of whether such motion is filed by the Director of the BOP or the defendant. It would be applicable if the defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Sixth, the proposed amendment would add a new category ("Unusually Long Sentences") providing that if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the *Guidelines Manual* that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Seventh, the proposed amendment would add a new subsection (c) providing that, except as provided in subsection (b)(6), a change in the law (including an amendment to the *Guidelines Manual* that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under §1B1.13. It

3

also provides that if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under §1B1.13, a change in the law (including an amendment to the *Guidelines Manual* that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

Eighth, the proposed amendment would move current Application Note 3 (stating that, pursuant to 28 U.S.C. § 994(t), rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for purposes of §1B1.13) into the guideline as a new subsection (d). It would also add new language providing that rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

Eighth, the proposed amendment would move Application Note 2 (concerning the foreseeability of extraordinary and compelling reasons) into the guideline as a new subsection (e).

Finally, as conforming changes, the proposed amendment would delete application notes 4 (concerning a motion by the Director of the Bureau of Prisons) and 5 (concerning application of subdivision 3) and make a minor technical change to the Background commentary. The proposed amendment would add two new application notes to the Commentary to §1B1.13. New application note 1 would clarify how the policy statement interacts with the temporary release of a defendant from custody under 18 U.S.C. § 3622. New application note 2 would provide that the Commission encourages the court to make its best effort to ensure that any victims of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard.

## Proposed Amendment:

### §1B1.13. Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)

(a) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant under pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)  (A)  extraordinary and compelling reasons warrant the reduction; or

   (B)  the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)   the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)   the reduction is consistent with this policy statement.

(b)  EXTRAORDINARY AND COMPELLING REASONS.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1)  MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—

    (A)  {The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.}*

    (B)  {The defendant is—

        (i)   suffering from a serious physical or medical condition,

        (ii)  suffering from a serious functional or cognitive impairment, or

        (iii) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.}*

    (C)  The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

    (D)  The defendant presents the following circumstances—

        (i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

        (ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing

---

\* The text in braces currently appears in the Commentary to §1B1.13. The proposed amendment would place the text here.

outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

(2) {AGE OF THE DEFENDANT.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.}*

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT.—

(A) {The death or incapacitation of the caregiver of the defendant's minor child or minor childrenthe defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.}**

(B) {The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.}*

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, *immediate family member* refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4) VICTIM OF ABUSE.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of—

(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

---

\* The text in braces currently appears in the Commentary to §1B1.13. The proposed amendment would place the text here.

\*\* The text in braces currently appears in the Commentary to §1B1.13. The proposed amendment would place the text here with the changes shown in revision marks.

6

(B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) OTHER REASONS.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) UNUSUALLY LONG SENTENCES.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the *Guidelines Manual* that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the *Guidelines Manual* that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the *Guidelines Manual* that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

(d) {REHABILITATION OF THE DEFENDANT.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.}\*\*

---

\*\* The text in braces currently appears in the Commentary to §1B1.13. The proposed amendment would place the text here with the changes shown in revision marks.

⑥   {FORESEEABILITY OF EXTRAORDINARY AND COMPELLING REASONS.—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.}*

## Commentary

**Application Notes:**

1.  ~~**Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:~~

    ~~(A)  Medical Condition of the Defendant.—~~

        ~~(i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.~~

        ~~(ii)  The defendant is—~~

            ~~(I)  suffering from a serious physical or medical condition,~~

            ~~(II)  suffering from a serious functional or cognitive impairment, or~~

            ~~(III)  experiencing deteriorating physical or mental health because of the aging process,~~

        ~~that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.~~

    ~~(B)  Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.~~

    ~~(C)  Family Circumstances.—~~

        ~~(i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.~~

        ~~(ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.~~

---

\*   The text in braces currently appears in the Commentary to §1B1.13. The proposed amendment would place the text here.

8

~~(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).~~

~~2.   Foreseeability of Extraordinary and Compelling Reasons.—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.~~

~~3.   Rehabilitation of the Defendant.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.~~

~~4.   Motion by the Director of the Bureau of Prisons.—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.~~

~~This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law.~~

~~5.   Application of Subdivision (3).—Any reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) and (2) is consistent with this policy statement.~~

1.   Interaction with Temporary Release from Custody Under 18 U.S.C. § 3622 ("Furlough").—A reduction of a defendant's term of imprisonment under this policy statement is not appropriate when releasing the defendant under 18 U.S.C. § 3622 for a limited time adequately addresses the defendant's circumstances.

2.   Notification of Victims.—Before granting a motion pursuant to 18 U.S.C. § 3582(c)(1)(A), the Commission encourages the court to make its best effort to ensure that any victim of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard, unless any such victim previously requested not to be notified.

**Background:** The Commission is required by 28 U.S.C. § 994(a)(2) to develop general policy statements regarding application of the guidelines or other aspects of sentencing that in the view of the Commission would further the purposes of sentencing (18 U.S.C. § 3553(a)(2)), including, among other things, the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c). In doing so, the Commission is ~~authorized~~ required by 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." This policy statement implements 28 U.S.C. § 994(a)(2) and (t).

\* \* \*

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Wahpeta, Ilene M. | 70523-408 | E/RDAP | FCI Waseca |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

SENSITIVE Request for Administrative Remedy: Please accept this submission regarding rapes, sexual abuse, sexual assaults, And sexual harassment that I suffered by former kitchen officers of FCI Dublin, known as Andrew Jones and Patrick Pool, from in or about March 2019 through in or about June 2022 and prior and subsequent thereto, and related personal injuries and civil rights violations. United States, acting through its agents, servants, contractors, and employees allegedly working within the scope of employment of BOP and/or FCI Dublin, disregarded and/or neglected an excessive risk that Jones and Pool were predators-in-uniform who repeatedly sexually abused inmates including myself. Due to BOP and/or FCI Dublin personnel's wrongful acts and/or omissions, Jones and Pool were given authority as correction officers and/or kitchen foremen supervising inmates working at the kitchen, and were emboldened to abuse that authority to sexually assault, harass, coerce, threaten, accost, and molest his victims including myself on numerous occasions. Jones and Pool were also allowed, permitted, condoned, or encouraged to use disciplinary measures such as unjust SHU placement to coerce, threaten, and blackmail me into complying with, and keeping silent about, their and other kitchen officers' sexual abuse. BOP and/or FCI Dublin personnel created, maintained, and perpetuated a pervasive culture of staff-on-inmate sexual abuse throughout FCI Dublin, which further allowed, permitted, condoned, encouraged, or emboldened Jones and Pool to sexually abuse me. Jones and Pool repeatedly isolated themselves with me in FCI Dublin, without proper monitoring, supervision, or oversight, despite prior complaints and indications regarding their sexual abuse, which were well known to other BOP and/or FCI Dublin personnel. BOP and/or FCI Dublin personnel repeatedly failed to acknowledge, address, investigate, and remedy suspicion or allegations of sexual and/or physical abuse by officers including Jones and Pool who were abusing numerous inmates in FCI Dublin. As a result, Jones and Pool sexually and physically abused me on many occasions, as a result of which I suffered severe trauma, emotional distress, physical injuries, and other permanent injuries and damages. I have also suffered, and continue to suffer, retaliation, abuse, and harassment by other BOP personnel because of my attempts to report the sexual abuse. I have also been denied proper psychological care, treatment, and support, further amplifying my injuries and damages. As such, I seek remedy to the fullest extent allowed under this Administrative Remedy process, including any available declaratory, injunctive, compensatory remedies.

| DATE | SIGNATURE OF REQUESTER |
|---|---|

**Part B- RESPONSE**

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL

SUBJECT: _____

| | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) | BP-229(13) APRIL 1982 |
|---|---|---|

USP LVN

Ilene WAHPETA# 70523408
E-UNIT
Po Box 1731
WASECA MN 56093


7020 3160 0000 7979 1361



RECEIVED

JUN 2 0 2023

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

70523-408
Federal Court House
Honorable Judge Snow
401 W Washington ST
Room 130
Phoenix, AZ 85003
United States

FEDERAL Court House
Honorable Judge Snow
401 W. WASHINGTON ST
Room 130
Phoenix, AZ 85003