THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE LRCiv 5.4, 7.1(a)(2)
(Rule Number/Section)

✓ FILED ___ LODGED
___ RECEIVED ___ COPY
JUL 17 2023
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

July 7th, 2023

From: Ilene Marie Wahpeta
#70523-408
FCI Waseca
Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093

To: Honorable Judge Snow
United States Courthouse
401 W. Washington Street, Room 130
Phoenix, AZ 85003

CR-17-41-PHX-GMS-3

Re: Addendum to Compassionate Release Motion Due to Recently Decided Precedent Case

Dear Honorable Judge Snow;

I have recently submitted a Motion for Compassionate Release pro se to your Honorable Court in accordance with 18 U.S.C. 3582(c)(1)(A) as amended by the First Step Act of 2018 and now submit this case for your review as it has many similarities to my case and was just recently decided.

United States v. Karilie Herrera, Case No. 17 Cr. 415 (PAC), LEXIS 91224, S.D.N.Y. May 24th, 2023: Ms. Herrera pled guilty to one count of conspiracy to commit Hobbs Act robbery stemming from her involvement in a 2008 hold-up. During the course of that robbery, the target of the robbery conspiracy was shot and killed by one of Ms. Herrera's co-conspirators "who remains un-identified and at large". The government concedes that Ms. Herrera, who was 17 years old at the time "did not intend that death".

In November 2019, the court sentenced Ms. Herrera to 120 months of imprisonment, plus three (3) years supervised release. This was a sizable downward variation from the advisory sentence of 240 months, a statutory maximum that was itself a significant downward departure from the 360-month-to-life advisory guidelines range that would have otherwise applied based on Ms. Herrera's offense level and criminal history category. Those inputs were supplied by the plea agreement which stipulated an offense level of 40- incorporating a three level acceptance of responsibility reduction from the applicable base offense level of 43 and a criminal history category of 4. Of Ms. Herrera's seven underlying criminal history points, three derived from a 2017 second degree assault conviction in New York State court that carried a six year prison sentence, which Ms,. Herrera has now served in full. Pursuant to U.S.S.G. 5G1.3, the sentence this court impose has run concurrently to that state sentence as of her July 5th, 2017, federal arrest in this case.

Although the repeated sexual abuse by an MCC correction officer occurred before Herrera's sentencing and the court was aware of it prior to rendering judgement - several related post sentencing developments invite further review. First, the officer in question has now pled guilty to abusive sexual contact and deprivation of rights under color of law; in December 2020, he was sentenced to 40 months imprisonment for preying on seven different women under his care at MCC (see United States v. Akparanta, No. 19-cr-00363, 2020 U.S. Dist. LEXIS 230344 (LGS) (S.D.N.Y. Dec. 8, 2020). And, although the parties quibbled at sentencing over the extent of Ms. Herrera's cooperation and the officer's criminal proceedings, the Probation Department's updated report clarifies that Ms. Herrera was "instrumental in the investigation and prosecution" of this officer.

Second, Ms. Herrera's request at multiple BOP facilities for treatment to address the effects of this abuse to have been either ignored or inadequately addressed. According to the Probation Department, Ms. Herrera was evaluated by Dr. Julie C. Medlin, Director of the Medlin Center "to assess any psychological damage caused to her by the sexual abuse of the correctional officer". Ms. Herrera's diagnosed symptoms stemming from the MCC abuse included anxious arousal, depression, post-traumatic stress disorder ("PTSD"), defense avoidance, sexual disturbance, and insecure attachment. Dr. Medlin recommended Ms. Herrera "attend Trauma focused behavior cognitive therapy, sexual assault survivor's therapy (group), and that she consult with a psychiatrist for medication needed for depression and difficulty with sleep."

The BOP, despite bearing responsibility for Ms. Herrera's sexual abuse by one of it's staff, has provided very little, if any, of this recommended treatment. The Probation Department reports that Ms. Herrera "was not provided with mental or emotional treatment" at all while incarcerated at MCC or MDC. Since arriving at FCI Danbury, she has received a single psychiatric screening and been provided with three medications, but "nothing further".

Your Honor, my Attorney (Jaehuyn Oh from Fuchsberg Law Firm, 3 Park Avenue, New York) has made attempts for me to be seen by a Psychiatrist, however, the Federal Bureau of Prisons has not accommodated and I remain without vital and necessary mental health treatment. I have been able to meet with Mr. Wunderlich in the Psychology Department three (3) times, however, he is only a "Mental Health Specialist" and it is merely a "band-aid" on the need for treatment after what I have endured.

Please see the Department of Justice Office of Inspector General report issued May 10th, 2023, regarding FCI Waseca. On Page 26 it states, "FCI Waseca houses inmates whose assessed medical and mental health needs exceed the core capabilities of the institution.... staff vacancies in the Psychology Service Department limit FCI Waseca's ability to provide psychological services and substance abuse programs, with primarily "crisis-focused" services provided instead..."

On Page 28 of the DOJ Report, it states "FCI Waseca's ability to provide Psychology and Substance Abuse Programs has been severely curtailed by staff vacancies. The Chief Psychologist described the psychology and substance use programs as severely short-staffed "for years". I will be unable to acquire vital and necessary mental heath treatment after suffering the abuse of the sexual assaults while in the custody of the Federal Bureau of Prisons.

In the case cited above, it states on page 5, that although the court was aware at sentencing of Ms. Herrera's sexual abuse, new developments render these horrific events for post sentencing review. First, the abuser has since pled guilty and is currently serving a lengthy prison sentence. The Probation Department now characterizes Ms. Herrera as having been instrumental to that prosecution, which has had the effect of protecting of pother MCC detainees from this officer's predatory supervision. Second, and more immediately, Ms. Herrera's mental health treatment needs stemming from this abuse has been consistently disregarded at MCC, MDC and FCI Danbury alike.

"It is difficult to imagine a more damning sequence of BOP neglect: first permitting it's own staff to prey upon Ms. Herrera and others entrusted to it's care, and then failing to adequately tend to the resulting trauma" states the Judge.

See United States v. DeMartino, No. 03-cr-00285 (RJD) (E.D.N.Y. May 26th, 2022) (granting compassionate release contrasting the court's "impression that the BOP has undertaken the bare minimum of [medical] care" for the defendant with the government's Eighth Amendment "obligation to provide medical care for those whom it is punishing by incarceration")(quoting Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); see also United States v. Perez, 451 F. Supp. 3d 288, 290 (S.D.N.Y. 2020)(granting compassionate release based on health complications that "stem from injuries suffered during [the defendant's] incarceration").

Particularly, relevant on this point is United States v. Richardson, No. 16-cr-461 (ILG), 2022 U.S. Dist. LEXIS 183497, 2022 WL 5246076 (E.D.N.Y. Oct. 6th, 2022). In that case, Judge Glasser granted a defendant's motion for sentence modification based, in part, on the sexual abuse she suffered at the hands of the same officer that abused Ms. Herrera. Judge Glasser found that the combination of medical negligence from BOP and the sexual abuse suffered are contemporaneously with that negligence warranted a reduction in the defendant's sentence. Similarly here, the combination of the abuse Ms. Herrera suffered at the hands of a BOP correction officer and BOP's seeming inability to provide sufficient care for Ms. Herrera's PTSD and mental anguish she developed ion response to that abuse warrants the Court's reconsideration of Ms. Herrera's sentence.

Finally, the Court recognizes Herrera's extraordinary efforts to rehabilitate herself while incarcerated. Although rehabilitation alone may not serve as a basis for compassionate release, in conjunction with other circumstances, "rehabilitation is relevant to whether there are extraordinary and compelling reasons for a sentence reduction." As the Court acknowledged at sentencing, Herrera committed the underlying crime at 17 years old. Now, at 32 years old, she has consistently proven herself a mature, intelligent, hardworking individual with a passion for education. Prior to her sentencing, she was the first student at MCC to received 20 credits for college courses from New School. Multiple classmates and professors wrote on her behalf at sentencing. However, the Court focuses on her more recent conduct;since sentencing and despite the COVID-19 pandemic, Herrera has shown herself to be even more dedicated to her self-improvement. As of March 1, 2023, she completed an astonishing 2000 hours of "On the Job" training as a legal secretary. Further, years after sentencing, Herrera remains in contact with her classmates from New School, who continue to both collaborate with Herrera artistically and advocate for her as a leader, writer, and human being. Upon release, Herrera will be in contact with the Women's Prison Association to further pursue her education and employment opportunities. Herrera's conduct in prison since her sentencing shows her to be focused on the betterment of herself and those around her, going far beyond the diligence and rehabilitation "expected" of incarcerated individuals.

The Court emphasizes that each of these reasons, alone, might not necessarily reach the high threshold necessary to be "extraordinary and compelling".The Court considered many of these circumstances at the time of sentencing, and Herrera received a shorter sentence because of them. The Court bases its findings on the developments since sentencing, which indicate that Herrera has suffered medical negligence related to her sexual abuse, prevailed in a criminal case involving her most serious prior offense, cooperated with authorities in a manner that was "instrumental" in convicting her abuser, and continued to rehabilitate herself all the while. The totality of these circumstances, not each individual circumstance, are extraordinary and compelling enough to warrant reducing Herrera's sentence.

Regarding the 3553(a) factors, the Judge states on Page 7 prior to the conclusion:

"Along with the BOP's twin failures with respect to Ms. Herrera's abuse - first allowing it to occur at all, and then failing to adequately address it's ongoing harm- these additional post-sentencing developments have combined to mitigate, counterbalance, and more expediently vindicate the 3553(a) factors weighing in favor of a prolonged sentence in ways that could not have been foreseen when the court initially imposed it's sentence. In sum, it is unclear what there is to be gained by keeping Ms. Herrera incarcerated. By contrast, the harms she has suffered, and continues to suffer by virtue of that incarceration are quite clear." Her motion for Compassionate Release was GRANTED.

Your Honor, similarly, in my situation, the 18 U.S.C. 3553(a) factors weigh in favor of release. I have completed six and one-half (6 1/2) years of my sentence and only have 23 months left of my sentence and have agreed to a term of supervised release with special conditions imposed which would mitigate any risks. I will comply with the rules and regulations of the U.S. Probation Office. I have completed a substantial amount of rehabilitation including the RDAP Program.

I have suffered sexual assault while in the custody of the Federal Bureau of Prisons without psychological treatment and care after the fact. It is unclear what is to be gained by keeping me incarcerated, and by contrast, the harms I have suffered and continue to suffer by virtue of that incarceration are quite clear.

I pray that your Honorable Court finds Compassionate Release is appropriate at this time.

Respectfully Submitted,

Ilene Marie Wahpeta

Ilene W

UNITED STATES OF AMERICA - against - KARILIE HERRERA, Defendant.
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
2023 U.S. Dist. LEXIS 91224
17 Cr. 415 (PAC)
May 24, 2023, Decided
May 24, 2023, Filed

**Counsel** **{2023 U.S. Dist. LEXIS 1}**For USA, Plaintiff: Hagan Cordell Scotten, LEAD ATTORNEY, PRO HAC VICE, Douglas Samuel Zolkind, U.S Attorney's Office, SDNY, New York, NY; Sarah Rebecca Krissoff, LEAD ATTORNEY, New York, NY.

**Judges:** HONORABLE PAUL A. CROTTY, United States District Judge.

**Opinion**

**Opinion by:** PAUL A. CROTTY

**Opinion**

**OPINION & ORDER**

Past the midway point of her 120-month sentence for conspiracy to commit Hobbs Act robbery, Karilie Herrera seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). At the heart of her motion are several post-sentencing developments that she argues constitute extraordinary and compelling circumstances warranting a reduced sentence of time served. Those circumstances include, *inter alia*, (1) the vacatur and dismissal of the conviction that supplied many of her criminal history points at sentencing, and (2) the Bureau of Prison ("BOP")'s failure to provide adequate mental health treatment following Herrera's persistent sexual abuse by one of the BOP's own.

The Court finds that extraordinary and compelling circumstances warrant relief in this exceptional case, and that the sentencing factors set forth in 18 U.S.C. § 3553(a) are not inconsistent with a sentence of time served. Accordingly, Herrera's motion is **GRANTED**.

**BACKGROUND**

**A. Herrera's Sentence**

In February**{2023 U.S. Dist. LEXIS 2}** 2019, Herrera pled guilty to one count of conspiracy to commit Hobbs Act robbery stemming from her involvement in a 2008 hold-up. During the course of that robbery, the target of the robbery conspiracy was shot and killed by one of Herrera's co-conspirators (who remains unidentified and at large). The Government concedes that Herrera, who was 17 years old at the time, "did not intend that death." (Gov't Opp'n. at 1, ECF No. 77.)

In November 2019, the Court sentenced Herrera to 120 months' imprisonment, plus three years' supervised release. (*See* ECF No. 62.) This was a sizable downward variance from the advisory sentence of 240 months, a statutory maximum that was itself a significant downward departure from the 360-months-to-life advisory Guidelines range that would have otherwise applied based on Herrera's offense level and criminal history category. Those inputs were supplied by the plea agreement, which stipulated an offense level of 40-incorporating a three-level acceptance of responsibility reduction from the applicable base offense level of 43-and a criminal history category

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

of IV. Of Herrera's seven underlying criminal history points, three derived from a 2017 second-degree assault**{2023 U.S. Dist. LEXIS 3}** conviction in New York state court that carried a six-year prison sentence, which Herrera has now served in full. (*See* Probation Mem. at 2.)1 Pursuant to U.S.S.G. § 5G1.3, the sentence this Court imposed has run concurrently to that state sentence, as of her July 5, 2017, federal arrest in this case. (*See* Sent'g Tr. at 31:3; ECF No. 64.)

The Court justified imposing a below-Guidelines sentence on several grounds. As an initial matter, it recognized that the plea agreement had used U.S.S.G. § 2A1.1-providing a base offense level of 43 for first-degree murder-as its starting point. Notwithstanding the parties' agreement on this matter, which was not binding on the Court, the Court deemed a base offense level of 29-as prescribed for voluntary manslaughter2 under § 2A1.3-to be "closer to what is an appropriate sentence" for Herrera's actual conduct in this case. (Sent'g Tr. at 30:11-31:1.) The Court also emphasized that Herrera was only 17 years old at the time of the offense, and that she had suffered "almost a lifetime of abuse" up to that point. (*Id.* at 28:19-24.) Finally, the Court relied on a mitigation report submitted prior to sentencing, which documented, among other things, how a BOP corrections officer**{2023 U.S. Dist. LEXIS 4}** repeatedly sexually abused Herrera throughout her time at MCC. (*See id.* at 28:7-8; Def.'s Sent'g Mem., Ex. A at 14-16, ECF No. 60.)

Synthetizing these mitigating factors with the seriousness of the crime at issue and Herrera's criminal history, which it deemed a "serious factor" (Sent'g Tr. at 29:24-30:1), the Court imposed a 120-month term of imprisonment, plus three years' supervised release.

**B. Co-Conspirators' Sentences**

The Court also sentenced the two other co-conspirators who were identified and arrested in this matter, Like Herrera, neither co-conspirator was the actual shooter.

The first co-conspirator also pled guilty to conspiracy to commit Hobbs Act robbery, along with four other counts, and received a sentence of time served (after being detained for roughly three years) plus three years' supervised release. The Court recently terminated supervised release after only 22 months. Like Herrera, this co-conspirator was under the age of 18 at the time of the offense.

The Court also sentenced a second co-conspirator, whose role in the robbery the Government described as "equal" (Sent'g Tr. at 18:9-13) to Herrera's. This second co-conspirator also pled guilty to conspiracy**{2023 U.S. Dist. LEXIS 5}** to commit Hobbs Act robbery, along with several additional counts, including murder through the use of a firearm. With a criminal history category of III, this co-conspirator received a 70-month term of imprisonment, plus five years' supervised release, after the Government submitted a §5K1.1 letter on the co-conspirator's behalf.

**C. Subsequent Developments**

*i. Vacatur and Dismissal of State Assault Conviction*

We turn now to relevant events which have occurred subsequent to Herrera's sentencing. The New York State conviction that wielded the single greatest impact on her criminal history score is no longer on the books. In February 2021, the First Department vacated Herrera's 2017 second-degree assault conviction based on the trial court's failure to properly instruct the jury regarding Herrera's justification (i.e., self-defense) defense. *People v. Herrera*, 193 A.D.3d 189, 142 N.Y.S.3d 59, 60 (N.Y. App. Div. 1st Dep't 2021), *leave to appeal denied*, 37 N.Y.3d 957, 147 N.Y.S.3d 529, 170 N.E.3d 403 (N.Y. 2021). The case was subsequently dismissed. (*See* Cardi Ltr. Ex. at 1, ECF No. 83.) Without this three-point conviction, Herrera's criminal history score at sentencing would have totaled four points rather than seven points, bringing her criminal history from category IV to category III. (*See* Probation Mem. at 2.)

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

*ii. Sexual Assault and**{2023 U.S. Dist. LEXIS 6}** Harassment*

Although the repeated sexual abuse3 by an MCC corrections officer occurred before Herrera's sentencing-and the Court was aware of it prior to rendering judgment-several related post-sentencing developments invite further review. First, the officer in question has now pled guilty to abusive sexual contact and deprivation of rights under color of law; in December 2020, he was sentenced to 40 months' imprisonment for preying on seven different women under his care at MCC.4 *See United States v. Akparanta*, No. 19-cr-00363, 2020 U.S. Dist. LEXIS 230344 (LGS) (S.D.N.Y. Dec. 8, 2020), ECF No. 60. And although the parties quibbled at sentencing over the extent of Herrera's cooperation in the officer's criminal proceedings, the Probation Department's updated report clarifies that Herrera was "instrumental in the investigation and prosecution" of this officer. (Probation Mem. at 2.)

Second, Herrera's requests at multiple BOP facilities for treatment to address the effects of this abuse have been either ignored or inadequately addressed. According to the Probation Department, Herrera was evaluated by Dr. Julie C. Medlin, director of the Medlin Center, "to assess any psychological damage caused to her by the sexual abuse of the corrections officer." (Probation**{2023 U.S. Dist. LEXIS 7}** Mem. at 2.) Herrera's diagnosed symptoms stemming from the MCC abuse included anxious arousal, depression, post-traumatic stress disorder ("PSTD"), defense avoidance, sexual disturbance, and insecure attachment. (*Id.*) Dr. Medlin recommended Herrera "attend trauma focused behavior cognitive therapy, sexual assault survivor's therapy (group) and that she consult with a psychiatrist for medication needed for depression and difficulty with sleep." (*Id.* at 3.)

The BOP, despite bearing responsibility for Herrera's sexual abuse by one of its staff, has provided very little, if any, of this recommended treatment. The Probation Department reports that Herrera "was not provided with mental or emotional health treatment" at all while incarcerated at MCC or MDC. (*Id.*) Since arriving at FCI Danbury, she has received a single psychiatric screening and been provided with three medications, but "nothing further." (*Id.* at 3.) Although she has reported that these medications do not reduce her symptoms and has requested further treatment, but FCI Danbury has yet to provide any. (*Id.*)

**D. Herrera's Incarceration**

As of May 24, 2023, the BOP projects Herrera's release date to be April 25, 2025. *Inmate Locator**{2023 U.S. Dist. LEXIS 8}***, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 24, 2023). The BOP calculates that she began serving her federal sentence on November 20, 2019 (the date this Court sentenced her). (*See* June 17, 2022, Data Sheet.)5 In accordance with the Court's order that Herrera's federal sentence run concurrently with her state sentence as of the date of her federal arrest, July 5, 2017, the BOP also credits Herrera for roughly 28.5 months between that date and November 20, 2019, during which time she was also serving the now-dismissed state assault conviction. (*See id.*) All of this is properly incorporated into the BOP's calculation of Herrera's time served for the sentence this Court imposed.

**DISCUSSION**

**A. Applicable Law**

Once imposed, a district court must leave a term of imprisonment undisturbed, subject to "limited" exceptions. *United States v. Maldonado*, No. 16-CR-285 (CM), 2021 U.S. Dist. LEXIS 29618, 2021 WL 639069, at*l (S.D.N.Y. Feb. 17, 2021). At issue here is the so-called "Compassionate Release" exception, codified at 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Section 603(b), Pub. L. No. 115-391, 132 Stat. 5194. This provision allows a defendant who has

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

exhausted administrative avenues to petition a district court for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). The district court may then grant a sentence reduction where it determines that (1) "extraordinary and compelling**{2023 U.S. Dist. LEXIS 9}** reasons warrant such a reduction" and (2) such relief would be consistent with the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

District courts have "broad discretion" in this area. *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022). They may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (adding that "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason"). Moreover, "where no single factor alone may justify release, the total circumstances may still rise to the level of extraordinary and compelling reasons for release." *United States v. Ramirez*, 571 F. Supp. 3d 40, 48 (S.D.N.Y. 2021) (internal quotation marks omitted).

**B. Exhaustion**

The Government does not dispute that Herrera has pursued-and been denied-sentencing relief through the proper administrative channels. (*See* Gov't Opp'n at 4; Def.'s Mot., Ex. B.) Nonetheless, it contends that Herrera's compassionate release motion fails on "issue exhaustion" grounds because it raises new arguments not presented in her administrative petition.

The Court disagrees. To start, the Court**{2023 U.S. Dist. LEXIS 10}** notes the "split among courts in this district as to whether section 3582(c)(1)(A) requires a defendant to exhaust administrative remedies with respect to each issue raised in a motion for compassionate release." *United States v. Gunn*, No. 06-cr-911 (AKH), 2022 U.S. Dist. LEXIS 103627, 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022). For that matter, there is even disagreement as to whether the weight of authority within that split skews for or against imposing such a requirement. *Compare United States v. Delgado*, 582 F. Supp. 3d 136, 139 (S.D.N.Y. 2022) ("The Court joins the majority of district courts that have addressed issue exhaustion and concludes that it is not required."), *with United States v. Collado*, No. 14-cr-731 (LTS), 2021 U.S. Dist. LEXIS 116333, 2021 WL 2555838, at *3 (S.D.N.Y. June 21, 2021) ("[C]ourts have generally required an inmate to present to the warden of his or her facility the same or similar ground for compassionate release . . . .") (internal quotation marks omitted).

However, in the absence of Second Circuit guidance on the question, courts have relied upon Judge Stein's "thorough and well-reasoned opinion [holding that] the statutory scheme contains none of the usual indicia of Congressional intent to require litigants to present each argument to an administrative decisionmaker before obtaining a hearing on the merits before a district court." *United States v. Salemo*, No. 11-cr-65 (JSR), 2021 U.S. Dist. LEXIS 169162, 2021 WL 4060354, at *3 (S.D.N.Y. Sept. 7, 2021) (adopting Judge Stein's reasoning from *United States v. Torres*, 464 F. Supp. 3d 651, 655-56 (S.D.N.Y. 2020)); *see Delgado*, 582 F. Supp. 3d at 139 (same). The Court adopts Judge Stein's analysis and concludes that § 3582(c)(1)(A) does not demand issue**{2023 U.S. Dist. LEXIS 11}** exhaustion.

Further, even if issue exhaustion were required, the Court would waive the requirement in this case. Herrera's motion to the BOP advanced nearly all of the arguments she pursues here, with the exception of the vacated state conviction. (*See* Def.'s Reply, Ex. A, ECF No. 81.) Nonetheless, as the Government itself underscores, the warden's denial of that application referred only to Herrera's "concerns about COVID-19." (Def.'s Mot., Ex. B; *see* Gov't Opp'n at 4.) The Court therefore concludes that it would be "futile" to require Herrera to retread an administrative track that has

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

already proven itself unable to examine the full breadth of her request. *See United States v. El-Hanafi*, 460 F. Supp. 3d 502, 507 (S.D.N.Y. 2020).

Having dispensed with the Government's exhaustion argument, the Court turns to the merits of Herrera's motion.

**C. Extraordinary and Compelling Circumstances**

In this exceptional case, based on the totality of the circumstances faced by Herrera, there are extraordinary and compelling reasons warranting a sentence reduction. At sentencing, the Court relied heavily on Herrera's criminal history, deeming it a serious factor that counterbalanced the many mitigating factors weighing in favor of a shorter sentence. Nearly half of that**{2023 U.S. Dist. LEXIS 12}** criminal history has now disappeared: the single largest contributor to Herrera's criminal history score (and the only conviction for conduct occurring after the now 32-year-old Herrera turned 21) has been vacated and dismissed. *See United States v. Monroe*, No. 05-cr-1042-01 (KMW), 2009 U.S. Dist. LEXIS 50043, 2009 WL 1448959, at *1 (S.D.N.Y. May 8, 2009) (granting a sentence reduction where subsequent events would have lowered the defendant's advisory sentencing range). Furthermore, Herrera has already served the entire sentence for the now-vacated conviction, including seemingly some amount of time that did not run concurrently with her federal sentence.6 Although it is not the Court's job to account for a sentence it did not impose, arising from a since-vacated state conviction beyond its jurisdiction, these tidy jurisdictional borders begin to blur where the state judgment has impacted the subsequent federal sentence.

Nor is the dismissal of Herrera's state conviction the only circumstance weighing in favor of a sentence reduction; Herrera suffered a harsher punishment than necessary when she faced sexual abuse at the hands of an MCC corrections officer. Sexual abuse of female prisoners is an egregious stain on the track record of the BOP. Indeed, on December 13, 2022, the Senate Committee on**{2023 U.S. Dist. LEXIS 13}** Homeland Security and Governmental Affairs issued a report detailing recent and rampant abuse of female prisoners in federal facilities, including the BOP's chronic failure to address the abuse.7 Herrera's abuser was named personally in the report as evidence of MCC's specific failures on this front.8

Although the Court was aware at sentencing of Herrera's sexual abuse, new developments render these horrific events ripe for post-sentencing review. First, the abuser has since pled guilty and is currently serving a lengthy prison sentence. The Probation Department now characterizes Herrera as having been instrumental to that prosecution, which has had the effect of protecting other MCC detainees from this officer's predatory supervision. Second, and more immediately, Herrera's mental health treatment needs stemming from this abuse have been consistently disregarded at MCC, MDC, and FCI Danbury alike. It is difficult to imagine a more damning sequence of BOP neglect: first permitting its own staff to prey upon Herrera and others entrusted to its care, and then failing to adequately tend to the resulting trauma. *See United States v. DeMartino*, No. 03-cr-00285 (RJD) (E.D.N.Y. May 26, 2022), ECF No. 276 at 6 (granting compassionate release, contrasting the**{2023 U.S. Dist. LEXIS 14}** court's "impression that the BOP has undertaken the bare minimum of [medical] care" for the defendant with the government's Eighth Amendment "obligation to provide medical care for those whom it is punishing by incarceration") (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); *see also United States v. Perez*, 451 F. Supp. 3d 288, 290 (S.D.N.Y. 2020) (granting compassionate release based on health complications that "stem from injuries suffered during [the defendant's] incarceration") (internal quotation marks omitted).

Particularly relevant on this point is *United States v. Richardson*, No. 16-CR-461 (ILG), 2022 U.S. Dist. LEXIS 183497, 2022 WL 5246076 (E.D.N.Y. Oct. 6, 2022). In that case, Judge Glasser granted a defendant's motion for a sentence modification based, in part, on the sexual abuse she suffered at

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

the hands of the *same officer* that abused Herrera. (Def.'s Supp. Br. at 1, ECF No. 96.) Judge Glasser found that the combination of medical negligence from BOP and the sexual abuse suffered contemporaneously with that negligence warranted a reduction in the defendant's sentence. *Richardson*, 2022 U.S. Dist. LEXIS 183497, 2022 WL 5246076, at *3. Similarly here, the combination of the abuse Herrera suffered at the hands of a BOP corrections officer and the BOP's seeming inability to provide sufficient care for Herrera's PTSD and mental anguish she developed *in response* to that abuse warrants the Court's reconsideration of Herrera's sentence.

Finally, the Court recognizes Herrera's**{2023 U.S. Dist. LEXIS 15}** extraordinary efforts to rehabilitate herself while incarcerated. Although rehabilitation alone may not serve as the basis for compassionate release, in conjunction with other circumstances, "rehabilitation is relevant to whether there are extraordinary and compelling reasons for a sentence reduction." *Torres*, 464 F. Supp. 3d at 661; *see Concepcion v. United States*, 142 S. Ct. 2389, 2401, 213 L. Ed. 2d 731 (2022). As the Court acknowledged at sentencing, Herrera committed the underlying crime at 17 years old. Now, at 32 years old, she has consistently proven herself a mature, intelligent, hardworking individual with a passion for education. Prior to her sentencing, she was the first student at MCC to received 20 credits for college courses from the New School. (Def.'s Sent'g Mem., Ex. D.) Multiple classmates and professors wrote on her behalf at sentencing. (*Id.*, Ex. F.) However, the Court focuses on her more recent conduct; since sentencing and despite the COVID-19 pandemic, Herrera has shown herself to be even more dedicated to her self-improvement. As of March 1, 2023, she completed an astonishing 2000 hours of "On the Job" training as a legal secretary. (ECF No. 98, Ex. A). Further, years after sentencing, Herrera remains in contact with her classmates from the New School, who continue**{2023 U.S. Dist. LEXIS 16}** to both collaborate with Herrera artistically and advocate for her as a leader, writer, and human being. (*See* ECF No. 96, Ex. A.) Upon release, Herrera will be in contact with the Women's Prison Association to further pursue her education and employment opportunities. (Def.'s Mot., Ex I.) Herrera's conduct in prison since her sentencing shows her to be focused on the betterment of herself and those around her, going far beyond the diligence and rehabilitation "expected" of incarcerated individuals. *Cf. United States v. Saleh*, No. 93-CR-181, 2020 U.S. Dist. LEXIS 119700, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020).

The Court emphasizes that each of these reasons, alone, might not necessarily reach the high threshold necessary to be "extraordinary and compelling." The Court considered many of these circumstances at the time of sentencing, and Herrera received a shorter sentence because of them. The Court bases its findings on the developments *since* sentencing, which indicate that Herrera has suffered medical negligence related to her sexual abuse, prevailed in a criminal case involving her most serious prior offense, cooperated with authorities in a manner that was "instrumental" in convicting her abuser, and continued to rehabilitate herself all the while. The *totality* of these circumstances,**{2023 U.S. Dist. LEXIS 17}** not each individual circumstance, are extraordinary and compelling enough to warrant reducing Herrera's sentence.

**D. § 3553(a) Factors**

The Court turns next to § 3553(a). To be sure, as the Court remarked at sentencing, the conspiracy Herrera helped to spearhead was a "senseless crime" that led to a young man's death. (Sent'g Tr. at 28:15-18.) And although the Court recognizes that Herrera neither shot the victim, nor intended for the victim to be shot, she was indisputably "involved in the plan and the execution of the plan" that precipitated his death. (*Id.*) The sentence initially imposed was calibrated to reflect the serious nature of the offense (and Herrera's organizational role), deter similar criminal conduct in the future, and "incapacitate Ms. Herrera from doing this again." (*Id.* at 29:1-5).

Although these rationales persist today, they are now outweighed by other § 3553(a) considerations.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

To start, the Court's recidivism concerns under § 3553(a)(2)(C) were informed in large part by the criminal history presented at sentencing. As discussed *supra*, that picture looks substantially different today: Herrera is now over a decade removed from her most recent criminal conduct. Moreover, as the Court noted at sentencing, the**{2023 U.S. Dist. LEXIS 18}** nature and circumstances of Herrera's offense were set against her history and characteristics-particularly her age, the "smart" and "thoughtful" adult she seemed to have matured into, and the "lifetime of abuse" she had suffered. (Sent'g Tr. at 29:6-13.) This abuse continued under the BOP's watch, and its effects have now been exacerbated-subsequent to sentencing-by the BOP's inability or unwillingness to provide effective mental health treatment to help remedy its own wrongs. *See United States v. Collado*, No. 14-cr-731 (LTS), 2022 U.S. Dist. LEXIS 19672, 2022 WL 329318, at *4 (S.D.N.Y. Feb. 2, 2022) (citing the defendant's "relatively limited access to the mental health treatment and cognitive training the Court contemplated at the time of sentencing" as grounds for granting compassionate release); *see also* 18 U.S.C. § 3553(a)(2)(D) (instructing courts "to provide the defendant with needed. . . medical care, or other correctional treatment in the most effective manner").

Further, other post-sentencing developments demonstrate why the punitive interests served by § 3553(a) have already been vindicated. Herrera has now spent the better part of a decade behind bars, serving this sentence and others-time that has proven substantially more punitive than the Court envisioned when it first sentenced her. Of course, the Court could not have**{2023 U.S. Dist. LEXIS 19}** foreseen when initially calibrating a "just punishment" under § 3553(a)(2)(A) that a significant portion of Herrera's sentence would coincide with COVID-19. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) ("[T]he pandemic, aside from posing a threat to [defendant's] health, has made [defendant's] incarceration harsher and more punitive than would otherwise have been the case.").

Nor could anyone have foreseen that Herrera's commendable efforts to rehabilitate herself through education would be forestalled by a pandemic that has significantly curtailed prison educational offerings. *See* 18 U.S.C. § 3553(a)(2)(D) (directing courts to "provide the defendant with needed educational or vocational training ... in the most effective manner"); *see also United States v. Phillibert*, 557 F. Supp. 3d 456, 460 (S.D.N.Y. 2021) (granting compassionate release, relying on the "impressive strides" the defendant had taken in prison, "including his successful completion of a GED and more than 20 courses offered by the BOP"). Importantly, while other compassionate release prospects may echo the more generalized pandemic arguments discussed in this motion, the pandemic's effects on prison education were particularly acute for Herrera, who has distinguished herself academically while in custody. (*See* Def.'s Mot., Ex. H; Def.'s Sent'g Mem., Exs. E-G.) Further,**{2023 U.S. Dist. LEXIS 20}** both of Herrera's co-defendants have been released in this case, making her the only remaining defendant incarcerated for this crime. *See United States v. Piggott*, No. 94-CR-417 (SHS), 2022 U.S. Dist. LEXIS 5293, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2022).

Along with the BOP's twin failures with respect to Herrera's abuse-first allowing it to occur at all, and then failing to adequately address its ongoing harm-these additional post-sentencing developments have combined to mitigate, counterbalance, and more expediently vindicate the § 3553(a) factors weighing in favor of a prolonged sentence in ways that could not have been foreseen when the Court initially imposed its sentence. In sum, it is unclear what there is to be gained by keeping Herrera incarcerated. By contrast, the harms she has suffered, and continues to suffer, by virtue of that incarceration are quite clear.

**CONCLUSION**

Herrera's motion for compassionate release is therefore **GRANTED**. Her term of imprisonment is



© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

reduced from 120 months to time served; all other aspects of the sentence originally imposed remain in effect. This order shall be stayed for fourteen days in order for the United States Probation Office and Bureau of Prisons to develop a reentry plan to facilitate Herrera's release from custody. *United States v. White*, No. 96-CR-1123 (SHS), 2022 U.S. Dist. LEXIS 221701, 2022 WL 18276933, at *6 (S.D.N.Y. Dec. 8, 2022).

Dated: New York, New York

May 24, 2023

SO ORDERED**{2023 U.S. Dist. LEXIS 21}**

/s/ Paul A. Crotty

HONORABLE PAUL A. CROTTY

United States District Judge

**Footnotes**

1

In March 2022 (*see* ECF No. 89), the Court exercised its discretion to instruct the Probation Department to supplement and update its initial investigation, as set forth in the Presentence Report ("PSR"), for purposes of this motion. *See United States v. Anderson*, 804 F. App'x 101, 103 (2d Cir. 2020) (summary order discussing a district court's discretion to order an updated PSR) (citing *United States v. Quintieri*, 306 F.3d 1217, 1234 (2d Cir. 2002)), *cert, denied*, 141 S. Ct. 439, 208 L. Ed. 2d 133 (2020). The Probation Department's responsive memorandum, dated June 15, 2022, is not docketed on ECF.

2

The sentencing transcript initially, erroneously, couples the term "involuntary manslaughter" with a base offense level of 29. (*See* Sent'g Tr. at 30:15.) This mistake is corrected just a few paragraphs later. (*See id.* at 30:25.)

3

According to the Probation Department, Herrera was "sexually assaulted by a correction officer" at MCC. (Probation Mem. at 2.) Specifically, the Probation Department reports that, according to Herrera, the officer "began bringing her and another inmate small items like food or toiletries, and then began asking for her to perform sexual acts on him or the other inmate," and that "for about one year, four times a week, this officer would abuse her in numerous ways, including making her touch his penis, inserting his finger in her vagina, and making her watch pornographic material with him." (*Id.*)

4

The officer stipulated that he had knowingly engaged in the abusive sexual contact of seven victims, all of whom were federal inmates at the MCC. *See United States v. Akparanta*, No. 19-cr-00363 (LGS) (S.D.N.Y. May 21, 2020), ECF No. 47 ¶ 12. Herrera is one of a group of plaintiff's who filed a related civil suit in this District against the officer, several other BOP officers and supervisors, and the United States. *See Herrera v. United States*, No. 20-cv-10206 (PKC). The case settled in May 2022, and the Court dismissed it on consent of all parties. *Id.*, ECF Nos. 66-68.

5

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

This sheet is not docketed; it was exchanged between the parties and the Court via email. The Data Sheet projects Herrera's release date to be February 7, 2026. This is inconsistent with the BOP website. As the website is more current than the Data Sheet, the Court relies on the website's projection.

6

It is not clear precisely how long Herrera was incarcerated for the state assault arrest and conviction prior to her July 5, 2017, federal arrest (the effective starting point for her concurrent federal sentence). Prior to sentencing, the Probation Department reported that Herrera was arrested for the state assault on April 23, 2015, convicted on January 11, 2017, and subject to a conditional release date of February 7, 2021. (*See* PSR ¶ 34, ECF No. 57.) Her conviction was vacated on February 23, 2021. *See Herrera*, 142 N.Y.S.3d at 62. Neither the Probation Department nor the parties have reported how much time Herrera served for the now-vacated conviction between April 23, 2015, and July 5, 2017. Herrera was in state custody at the time of the July 5, 2017, arrest. (*See* July 6, 2017, Tr. at 2:24-3:1, ECF No. 20.)

7

S. Comm, on Homeland Sec. and Gov't Aff., 117th Cong., Rep. on Sexual Abuse of Female Inmates in Fed. Prisons (2022) ("The Report"). The Court takes judicial notice of the Report as a matter of public record. *Fed. Election Comm'n v. Hall-Tyner Election Campaign Comm.*, 524 F. Supp. 955, 959 n.7 (S.D.N.Y. 1981), *aff'd*, 678 F.2d 416 (2d Cir. 1982).

8

The Report at 10.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

70523408

NAME Ilene Wahpeta REG# 70523408
FEDERAL CORRECTIONAL INSTITUTION UNIT E
P.O. BOX 1731
WASECA, MN 56093

SAINT PAUL MN 550
10 JUL 2023 PM

RECEIVED
JUL 17 2023
CLERK OF THE COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

⇔70523-408⇔
Federal Court House
Honorable Judge Snow
401 W Washington ST
Room 130
Phoenix, AZ 85003
United States

85003-212430