July 13th, 2023

From: Ilene Marie Wahpeta
#70523-408
FCI Waseca
Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE CIVIL 5.4
(Rule Number/Section)

✓ FILED ___ LODGED
___ RECEIVED ___ COPY

JUL 20 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

To: Honorable Judge G. Murray Snow
United States Court House
401 W. Washington Street, Room #130
Phoenix, AZ 85003

Re: Objection to the United States Motion to Extend Time to Respond to Defendant's Motion for Relief Under 18 U.S.C. 3582(c)(1)(A)

CR-17-00041-PHX-GMS-3

Dear Honorable Judge G. Murray Snow;

I am OBJECTING to the Motion for the Extension of Time submitted and filed 7/6/23 requesting additional time after the counsel failed to file the Instant Motion to Extend Time to Respond prior to the original deadline set for responsive memoranda by Local Rule 7.2(c).

I have filed a Motion for Compassionate Release pro se in accordance with 18 U.S.C. 3582(c)(1)(A) as amended by the First Step Act of 2018 on the basis of having suffered a PREA violation of SEXUAL ASSAULT while in the custody of the Federal Bureau of Prisons.

I have submitted a Report issued May 10th, 2023 which was the result of an unannounced inspection January 30th, 2023 through February 4th, 2023 at FCI Waseca where I am currently being housed which confirms "many significant issues" including:

(1) Gross overcrowding (on the date of the inspection there were 806 women and the maximum capacity is 712);
(2) EXTREME short staffing (now fewer officers than when the report was issued, January 30th, 2023);
(3) No ability to access Psychological Services for the majority of women served here;
(4) Deficient medical services;
(5) 38 open staff misconduct cases which had not been resolved for in excess of 221 days;
(6) FIVE open staff-on-inmate sexual assault cases currently;
(7) THREE inmate-on-inmate sexual assaults cases unresolved;
(8) A rampant drug problem (including poor quality cameras, etc.);
(9) No ability to access rehabilitation including access to FSA evidence based recidivism reducing educational classes and programs.
(10) Many significant issues: https://oig.justice.gov/reports/inspection-federal-bureau-prisons-federal-correctional-institution-Waseca

I have completed the RDAP program and at the current time I do not have any additional access to rehabilitation or psychological services. I need vital and necessary mental health counseling and treatment after having suffered multiple sexual assaults while in the custody of the Federal Bureau of Prisons. Wait lists for Psychological Services project out over years. Years.

Please see the addendum being filed this date, as well, which details the effects of lack of psychological services and the inability for the Federal Bureau of Prisons to provide this vital treatment and care after being responsible for the very acts that occurred while I have been in their custody.

Time is of the essence and time is important and I object to the Government's request for such an extensive amount of time to respond.

I am in need of vital and necessary mental health care and treatment and respectfully request the provision of Compassionate Release and am in agreement to comply with a term of supervised release with special conditions.

I have been the victim of a PREA and the United States Sentencing Commission has determined that this is an "extraordinary and compelling reason" warranting a sentence reduction.

Respectfully Submitted,

Ilene Marie Wahpeta

*Ilene W*

July 7th, 2023

From: Ilene Marie Wahpeta
#70523-408
FCI Waseca
Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093

To: Honorable Judge Snow
United States Courthouse
401 W. Washington Street, Room 130
Phoenix, AZ 85003

Re: Addendum to Compassionate Release Motion Due to Recently Decided Precedent Case

Dear Honorable Judge Snow;

I have recently submitted a Motion for Compassionate Release pro se to your Honorable Court in accordance with 18 U.S.C. 3582(c)(1)(A) as amended by the First Step Act of 2018 and now submit this case for your review as it has many similarities to my case and was just recently decided.

United States v. Karilie Herrera, Case No. 17 Cr. 415 (PAC), LEXIS 91224, S.D.N.Y. May 24th, 2023: Ms. Herrera pled guilty to one count of conspiracy to commit Hobbs Act robbery stemming from her involvement in a 2008 hold-up. During the course of that robbery, the target of the robbery conspiracy was shot and killed by one of Ms. Herrera's co-conspirators "who remains un-identified and at large". The government concedes that Ms. Herrera, who was 17 years old at the time "did not intend that death".

In November 2019, the court sentenced Ms. Herrera to 120 months of imprisonment, plus three (3) years supervised release. This was a sizable downward variation from the advisory sentence of 240 months, a statutory maximum that was itself a significant downward departure from the 360-month-to-life advisory guidelines range that would have otherwise applied based on Ms. Herrera's offense level and criminal history category. Those inputs were supplied by the plea agreement which stipulated an offense level of 40- incorporating a three level acceptance of responsibility reduction from the applicable base offense level of 43 and a criminal history category of 4. Of Ms. Herrera's seven underlying criminal history points, three derived from a 2017 second degree assault conviction in New York State court that carried a six year prison sentence, which Ms,. Herrera has now served in full. Pursuant to U.S.S.G. 5G1.3, the sentence this court impose has run concurrently to that state sentence as of her July 5th, 2017, federal arrest in this case.

Although the repeated sexual abuse by an MCC correction officer occurred before Herrera's sentencing and the court was aware of it prior to rendering judgement - several related post sentencing developments invite further review. First, the officer in question has now pled guilty to abusive sexual contact and deprivation of rights under color of law; in December 2020, he was sentenced to 40 months imprisonment for preying on seven different women under his care at MCC (see United States v. Akparanta, No. 19-cr-00363, 2020 U.S. Dist. LEXIS 230344 (LGS) (S.D.N.Y. Dec. 8, 2020). And, although the parties quibbled at sentencing over the extent of Ms. Herrera's cooperation and the officer's criminal proceedings, the Probation Department's updated report clarifies that Ms. Herrera was "instrumental in the investigation and prosecution" of this officer.

Second, Ms. Herrera's request at multiple BOP facilities for treatment to address the effects of this abuse to have been either ignored or inadequately addressed. According to the Probation Department, Ms. Herrera was evaluated by Dr. Julie C. Medlin, Director of the Medlin Center "to assess any psychological damage caused to her by the sexual abuse of the correctional officer". Ms. Herrera's diagnosed symptoms stemming from the MCC abuse included anxious arousal, depression, post-traumatic stress disorder ("PTSD"), defense avoidance, sexual disturbance, and insecure attachment. Dr. Medlin recommended Ms. Herrera "attend Trauma focused behavior cognitive therapy, sexual assault survivor's therapy (group), and that she consult with a psychiatrist for medication needed for depression and difficulty with sleep."

The BOP, despite bearing responsibility for Ms. Herrera's sexual abuse by one of it's staff, has provided very little, if any, of this recommended treatment. The Probation Department reports that Ms. Herrera "was not provided with mental or emotional treatment" at all while incarcerated at MCC or MDC. Since arriving at FCI Danbury, she has received a single psychiatric screening and been provided with three medications, but "nothing further".

Your Honor, my Attorney (Jaehuyn Oh from Fuchsberg Law Firm, 3 Park Avenue, New York) has made attempts for me to be seen by a Psychiatrist, however, the Federal Bureau of Prisons has not accommodated and I remain without vital and necessary mental health treatment. I have been able to meet with Mr. Wunderlich in the Psychology Department three (3) times, however, he is only a "Mental Health Specialist" and it is merely a "band-aid" on the need for treatment after what I have endured.

Please see the Department of Justice Office of Inspector General report issued May 10th, 2023, regarding FCI Waseca. On Page 26 it states, "FCI Waseca houses inmates whose assessed medical and mental health needs exceed the core capabilities of the institution.... staff vacancies in the Psychology Service Department limit FCI Waseca's ability to provide psychological services and substance abuse programs, with primarily "crisis-focused" services provided instead..."

On Page 28 of the DOJ Report, it states "FCI Waseca's ability to provide Psychology and Substance Abuse Programs has been severely curtailed by staff vacancies. The Chief Psychologist described the psychology and substance use programs as severely short-staffed "for years". I will be unable to acquire vital and necessary mental heath treatment after suffering the abuse of the sexual assaults while in the custody of the Federal Bureau of Prisons.

In the case cited above, it states on page 5, that although the court was aware at sentencing of Ms. Herrera's sexual abuse, new developments render these horrific events for post sentencing review. First, the abuser has since pled guilty and is currently serving a lengthy prison sentence. The Probation Department now characterizes Ms. Herrera as having been instrumental to that prosecution, which has had the effect of protecting of pother MCC detainees from this officer's predatory supervision. Second, and more immediately, Ms. Herrera's mental health treatment needs stemming from this abuse has been consistently disregarded at MCC, MDC and FCI Danbury alike.

"It is difficult to imagine a more damning sequence of BOP neglect: first permitting it's own staff to prey upon Ms. Herrera and others entrusted to it's care, and then failing to adequately tend to the resulting trauma" states the Judge.

See United States v. DeMartino, No. 03-cr-00285 (RJD) (E.D.N.Y. May 26th, 2022) (granting compassionate release contrasting the court's "impression that the BOP has undertaken the bare minimum of [medical] care" for the defendant with the government's Eighth Amendment "obligation to provide medical care for those whom it is punishing by incarceration")(quoting Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); see also United States v. Perez, 451 F. Supp. 3d 288, 290 (S.D.N.Y. 2020)(granting compassionate release based on health complications that "stem from injuries suffered during [the defendant's] incarceration").

Particularly, relevant on this point is United States v. Richardson, No. 16-cr-461 (ILG), 2022 U.S. Dist. LEXIS 183497, 2022 WL 5246076 (E.D.N.Y. Oct. 6th, 2022). In that case, Judge Glasser granted a defendant's motion for sentence modification based, in part, on the sexual abuse she suffered at the hands of the same officer that abused Ms. Herrera. Judge Glasser found that the combination of medical negligence from BOP and the sexual abuse suffered are contemporaneously with that negligence warranted a reduction in the defendant's sentence. Similarly here, the combination of the abuse Ms. Herrera suffered at the hands of a BOP correction officer and BOP's seeming inability to provide sufficient care for Ms. Herrera's PTSD and mental anguish she developed ion response to that abuse warrants the Court's reconsideration of Ms. Herrera's sentence.

Finally, the Court recognizes Herrera's extraordinary efforts to rehabilitate herself while incarcerated. Although rehabilitation alone may not serve as a basis for compassionate release, in conjunction with other circumstances, "rehabilitation is relevant to whether there are extraordinary and compelling reasons for a sentence reduction." As the Court acknowledged at sentencing, Herrera committed the underlying crime at 17 years old. Now, at 32 years old, she has consistently proven herself a mature, intelligent, hardworking individual with a passion for education. Prior to her sentencing, she was the first student at MCC to received 20 credits for college courses from New School. Multiple classmates and professors wrote on her behalf at sentencing. However, the Court focuses on her more recent conduct;since sentencing and despite the COVID-19 pandemic, Herrera has shown herself to be even more dedicated to her self-improvement. As of March 1, 2023, she completed an astonishing 2000 hours of "On the Job" training as a legal secretary. Further, years after sentencing, Herrera remains in contact with her classmates from New School, who continue to both collaborate with Herrera artistically and advocate for her as a leader, writer, and human being. Upon release, Herrera will be in contact with the Women's Prison Association to further pursue her education and employment opportunities. Herrera's conduct in prison since her sentencing shows her to be focused on the betterment of herself and those around her, going far beyond the diligence and rehabilitation "expected" of incarcerated individuals.

The Court emphasizes that each of these reasons, alone, might not necessarily reach the high threshold necessary to be "extraordinary and compelling". The Court considered many of these circumstances at the time of sentencing, and Herrera received a shorter sentence because of them. The Court bases its findings on the developments since sentencing, which indicate that Herrera has suffered medical negligence related to her sexual abuse, prevailed in a criminal case involving her most serious prior offense, cooperated with authorities in a manner that was "instrumental" in convicting her abuser, and continued to rehabilitate herself all the while. The totality of these circumstances, not each individual circumstance, are extraordinary and compelling enough to warrant reducing Herrera's sentence.

Regarding the 3553(a) factors, the Judge states on Page 7 prior to the conclusion:

"Along with the BOP's twin failures with respect to Ms. Herrera's abuse - first allowing it to occur at all, and then failing to adequately address it's ongoing harm- these additional post-sentencing developments have combined to mitigate, counterbalance, and more expediently vindicate the 3553(a) factors weighing in favor of a prolonged sentence in ways that could not have been foreseen when the court initially imposed it's sentence. In sum, it is unclear what there is to be gained by keeping Ms. Herrera incarcerated. By contrast, the harms she has suffered, and continues to suffer by virtue of that incarceration are quite clear." Her motion for Compassionate Release was GRANTED.

Your Honor, similarly, in my situation, the 18 U.S.C. 3553(a) factors weigh in favor of release. I have completed six and one-half (6 1/2) years of my sentence and only have 23 months left of my sentence and have agreed to a term of supervised release with special conditions imposed which would mitigate any risks. I will comply with the rules and regulations of the U.S. Probation Office. I have completed a substantial amount of rehabilitation including the RDAP Program.

I have suffered sexual assault while in the custody of the Federal Bureau of Prisons without psychological treatment and care after the fact. It is unclear what is to be gained by keeping me incarcerated, and by contrast, the harms I have suffered and continue to suffer by virtue of that incarceration are quite clear.

I pray that your Honorable Court finds Compassionate Release is appropriate at this time.

Respectfully Submitted,

Ilene Marie Wahpeta

*Ilene W*

FEDERAL CORRECTIONAL INSTITUTION
Ilene·M· WAHPETA# 70523408
E-UNIT
Po Box 1731
WASECA, MN 56093

RECEIVED
JUL 2 0 2023
CLERK OF THE COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA



9589 0710 5270 0120 6956 88

CERTIFIED MAIL

⇔70523-408⇔
Federal Court House
Honorable Judge Snow
401 W Washington ST
Room 130
Phoenix, AZ 85003
United States