1   Alison K. Guernsey
2   Clinical Professor
    UNIVERSITY OF IOWA COLLEGE OF LAW
3   380 Boyd Law Building
    Iowa City, IA 52245
4   NY #4667366
    (319) 335-9023 phone
5   (319) 353-5445 fax
    alison-guernsey@uiowa.edu
6   Attorney for Defendant

7               UNITED STATES DISTRICT COURT
8             FOR THE DISTRICT OF ARIZONA

9   United States of America,              No.  2:17-cr-00041-003-PHX-GMS

10                          Plaintiff,     **Response in Opposition to Motion for**
                                           **an Indefinite Stay**
11          v.

12  Ilene Marie Wahpeta,                   Oral Argument Requested[1]

13                          Defendant.

14

15                    **Table of Contents**

16  I.    Analysis ................................................................................ 2

17        A.  The Government's motion erroneously assumes the
18            new policy statement applies to Ms. Wahpeta's motion; it does not ..... 3

19            1.  A request for a stay does not include a merits
20                analysis........................................................................ 4

21            2.  The substantiation requirement does not apply
22                to Ms. Wahpeta's motion because she exhausted
23                her claims and filed before November 1, 2023. .................... 4

24            3.  Even if the substantiation requirement applies,
25                Ms. Wahpeta can meet it. ......................................... 7

---

[1] Ms. Wahpeta requests oral argument because this is effectively a dispositive motion. The Government has requested an indefinite stay, but she has only 20 months remaining on her sentence. *See* BOP Inmate Locator, Reg. No. 70523-408, https://www.bop.gov/inmateloc.

4.  Ms. Wahpeta is also excused from meeting the substantiation requirement because of the undue-delay exception. ........................................................... 9

5.  If the Guideline applies, Ms. Wahpeta may not need to satisfy U.S.S.G. § 1B1.13(b)(4) because she satisfies U.S.S.G. § 1B1.13(b)(5). .................................... 12

B.  The Government has not met its burden under *Landis* because its request for a stay (1) is indefinite, and (2) its harm does not outweigh Ms. Wahpeta's. .................................................. 13

1.  The requested stay is indefinite and must be denied because the other proceeding does not appear likely to resolve in a reasonable time. ...................... 13

2.  The Government's hardship is minimal compared to the harm Ms. Wahpeta would suffer if the stay were granted. ........................................................... 14

3.  Staying the case until the investigation is complete does not simplify legal or factual issues. ............................... 16

II.   Conclusion ........................................................................................... 17

On November 15, 2023, the U.S. Attorney's Office for the Northern District of California invited Ms. Ilene Wahpeta to speak at former FCI Dublin Officer Andrew Jones's sentencing hearing and tell the world what he had done to her.[2]  Through tears, Ms. Wahpeta provided a "victim impact statement" to the Honorable Yvonne Gonzalez Rogers:

> Officer Jones raped me while I was at FCI Dublin. He took my happier self from me; he ruined the rest of my life. I want him to get what he deserves, and for that I'm asking for the maximum in custody. I will never forgive him.[3]

After this opening, Ms. Wahpeta spoke for five minutes, describing in detail her rapes, sexual assault, sexual harassment, and how the abuse impacted her.[4] Officer Jones was sentenced to 96 months, nearly triple his Guideline range[5] and the highest sentence of any FCI Dublin abuser to date.[6]

After Officer Jones was sentenced, investigators said they stand by "victims of abuse, and incarcerated individuals are no exception."[7] But Ms. Wahpeta is apparently the exception. When the government needed Ms. Wahpeta to help it put her rapist behind bars, it considered her a victim.[8] Now, it implies she is not and has requested that this Court stay the adjudication of her pending motion for a reduced sentence based on her rape and sexual abuse "until the findings of [the DOJ-OIG's] full investigation are available for the Court to

---

[2] *See* Ex. A at 29–33 (Jones Sent. Tr.).

[3] *Id.* at 29.

[4] *See id.* at 29–33

[5] *See id.* at 43; *id.* at 10.

[6] *See 4th Former Guard at Dublin Women's Prison Sentenced for Sexually Abusing Inmates*, CBS News (Nov. 16, 2023, 10:49 AM), https://tinyurl.com/2j2xyax7.

[7] Press Release, U.S. Att'y Off. of N.D. Cal, *Federal Correctional Officer Sentenced to 96 Months for Sexually Abusing Multiple Female Inmates*, (Nov. 16, 2023), *available at* https://tinyurl.com/4xexzdtr.

[8] *See* ECF No. 146 (Ex. F) (Victim Impact Statement); Ex. A at 29–33.

consider."[9] The implication of this position is that survivors of sexual abuse by federal employees are to be believed when assisting in prosecuting their abuser, but are to be disregarded when seeking relief from that very same pernicious, criminal abuse. This position only undermines these prosecutions, prosecutions that are of critical importance to the Department of Justice ("DOJ").[10]

## I. Analysis

The Court normally has broad discretion to grant a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). But there are three reasons why a stay is improper here.

First, the Government's substantive justification cannot support a stay. The Government argues it needs a stay to ensure that Ms. Wahpeta meets the "substantiation requirement" included in the post-November 1, 2023, U.S. Sentencing Guidelines policy statement that governs reduction-in-sentence motions.[11] *See* U.S.S.G. § 1B1.13(b)(4). But the new policy statement does not govern Ms. Wahpeta's motion. Ms. Wahpeta filed her motion before the effective date of those rules.[12] In other words, the Government's request presumes the new Guideline governs. This legal issue—which will apparently be contested—should be decided in the normal course of litigation.

Second, even assuming the new policy statement governs, a stay is still inappropriate because additional time is not needed to determine whether Ms. Wahpeta meets its terms. As

---

[9] *See* ECF No. 149 at 4.
[10] Press Release, U.S. Dep't of Justice, Off. of Pub. Affs., *Deputy Attorney General Lisa O. Monaco Delivers Remarks Marking the 20th Anniversary of the Prison Rape Elimination Act* (Nov. 29, 2023), *available at* https://tinyurl.com/msas7f9m.
[11] ECF No. 149 at 2–3.
[12] *See* U.S. Sent'g Guidelines Manual, § 1B1.13(b)(4) (2023 Amendments) (effective Nov. 1).

outlined below, Ms. Wahpeta either meets or is excused from the "substantiation requirement" set forth in U.S.S.G. § 1B1.13(b)(4). But, again, this determination is more appropriately made during the normal course of litigation, not in a motion to stay.

Third, the government relies on *Landis* in its request to stay these proceedings pending the completion of an independent proceeding.[13] A *Landis* stay has inherent fairness issues, so courts have developed a balancing test to ensure a stay is appropriate. *See Landis v. North America Co.*, 299 U.S. 248, 255 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). First, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). Second, the Court must balance the "competing interests" and "possible damage" to the parties. *CMAX, Inc.*, 300 F.2d at 268. The Government cannot carry its burden because the stay request is indefinite, and the harm to Ms. Wahpeta substantially outweighs the harm to the Government.

### A. The Government's motion erroneously assumes the new policy statement applies to Ms. Wahpeta's motion; it does not.

The Government's justification for the stay is that Ms. Wahpeta is required to substantiate her abuse through either a criminal conviction or an administrative or civil finding of liability.[14] This is part of the standard set forth in the post-November 1, 2023 policy statement, U.S.S.G. § 1B1.13(b)(4). The request for a stay thus presumes what will

---

[13] *See* ECF No. 149 at 4.
[14] *See* ECF No. 149 at 4; U.S.S.G. § 1B1.13(b)(4).

apparently be a contested issue in this case: whether the new policy statement even applies.[15] Deciding this substantive issue in a motion to stay is inappropriate. But, even if the policy statement governs, the Government is wrong about the merits.

### 1. A request for a stay does not include a merits analysis.

First, when a party requests a stay under *Landis* the inquiry is whether it is reasonable in relation to the harm asserted, and whether the movant will suffer more harm in moving forward than the party resisting the delay. *See, e.g.*, *Landis v. North America Co.*, 299 U.S. 248, 255 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). This limited inquiry does not envision a full-blown merits analysis of a substantive issue. *Cf. Weaver v. Pfizer, Inc.*, No. 2:14-CV-0818-KJM-KJN, 2014 WL 2002212, at *2 (E.D. Cal. May 15, 2014) ("[A] stay is not a decision on the merits. . ."). Because whether the new policy governs is a merits issue, a stay that presumes the merits issue has been settled against the non-movant is inappropriate.

### 2. The substantiation requirement does not apply to Ms. Wahpeta's motion because she exhausted her claims and filed before November 1, 2023.

Second, even assuming a motion to stay is the proper place to litigate the correct legal standard for Ms. Wahpeta's motion, the Government is wrong in arguing that more time is needed to determine whether Ms. Wahpeta meets the substantiation requirement in U.S.S.G. § 1B1.13(b)(4) because the substantiation requirement does *not* apply.

U.S. Sentencing Guidelines § 1B1.13(b)(4) became effective on November 1, 2023[16]—*after* Ms. Wahpeta exhausted with the Bureau of Prisons and *after* she filed her motion for a reduced sentence with the Court. Ms. Wahpeta exhausted with the BOP on

---

[15] *See* ECF No. 149 at 2.
[16] U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines (eff. Nov. 1, 2023).

May 9, 2023.[17] She filed her pro se motion on June 20, 2023.[18] And undersigned counsel filed a Substituted Motion on October 31, 2023.[19] As previously argued, because she exhausted and filed prior to the effective date of the new Guideline, she falls under the pre-November 1 legal standard.[20]

The legal standard in existence at the time Ms. Wahpeta exhausted her claim with the BOP and filed her motion with the Court must be the standard that governs for two reasons. First, general non-retroactivity principles apply. Courts typically interpret a new statute with the presumption that it does not apply to cases pending on the date of the law's enactment. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (citing *Landgraf v. USI Film Products*, 511 U.S. 244 (1994)). The exception is if retroactive "construction is required by explicit language or by necessary implication." *Id.* (internal quotation marks omitted). Here, there is no language in the Guideline that provides § 1B1.13(b)(4) applies to cases that were exhausted and filed before its enactment date.[21]

Second, any other rule would be inconsistent with the requirements of § 3582(c)(1)(A). Title 18 U.S. Code § 3582(c)(1)(A) requires that a person exhaust their claim with the BOP before filing a motion for a reduced sentence with the court. *See* 18 U.S.C. § 3582(c)(1)(A). The Government's position would require someone to have exhausted claims

---

[17] ECF No. 124 at 8.
[18] *See generally id.*
[19] ECF No. 146.
[20] *See* ECF No. 146 at 18–21.
[21] This contrasts with U.S.S.G. § 1B1.11, which provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." In *Dillon v. US*, 560 U.S. 817, 825-26 (2010), the Supreme Court held that a § 3582(c)(2) proceeding was not a "sentencing." Section 3582(c)(1) uses the same operative language, "reduce the term of imprisonment," and *Dillon*'s statement would apply equally.

on grounds that were not yet cognizable or wait to exhaust until the Guideline was effective.

But requiring exhaustion of a ground that has not yet been recognized would render the exhaustion requirement meaningless. The exhaustion requirement is a mandatory claims-processing rule that "promotes good policy" because "it allows the government to implement an orderly system for reviewing compassionate-release applications," and "ensures that the prison administrators can prioritize the most urgent claims." *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (internal quotation marks omitted). Its purpose cannot be fulfilled if the BOP cannot act because the ground on which someone has exhausted is not yet law. Moreover, requiring people who meet the criteria under the law as it exists when their claim arises to wait until a new Guideline has come into effect before exhausting and filing is not contemplated by the Guideline. Such a suggestion is contrary to the purpose of the provision, which is aimed at providing imminent relief.

In fact, the DOJ has taken Ms. Wahpeta's exact position—that the standard in existence when a party exhausts and files is the standard that governs—elsewhere. In a case under § 1B1.13(b)(6) where a litigant sought to exhaust prior to November 1 so they could file their substantive motion with the Court on the effective date, the Government argued:

> If the amendments pass without Congressional veto, [the defendant] would need to present claims grounded on the new amendments to his present warden for exhaustion before filing a motion with the Court for 18 U.S.C. § 3582(c)(1)(A) relief based upon the new amendments.[22]

To the extent that the Government disagrees about which standard governs, this issue deserves full briefing and argument so the Court may make an informed decision, and

---

[22] Gov't Response in *US v. Kiffin*, 4:12-cr-00053-RH-CAS, ECF No. 54 (N.D. Fla Oct. 25, 2023).

litigating this issue in a motion to stay short-changes the adversarial process.

### 3.  Even if the substantiation requirement applies, Ms. Wahpeta can meet it.

Third, even if the post-November 1 substantiation requirement does apply, Ms. Wahpeta can meet it. A stay is therefore unnecessary. Ms. Wahpeta can meet the substantiation requirement because the U.S. Attorney's Office for the Northern District of California designated her a "crime victim" of Officer Jones, and his "misconduct" has thus been established by a "criminal conviction." *See* U.S.S.G. § 1B1.13(b)(4).

Title 18 U.S. Code § 3771(a)(4) states only "crime victims" are entitled to give victim impact statements at sentencing hearings. *See* 18 U.S.C. § 3771(a)(4). "Crime victim" is defined as "a person directly and proximately harmed as a result of the commission of a Federal offense." *Id.* § 3771(e)(2)(A). When the U.S. Attorney's Office for the Northern District of California invited Ms. Wahpeta to give a victim impact statement at Officer Jones's sentencing hearing, it necessarily conceded that Ms. Wahpeta is a "person directly and proximately harmed as result of the commission of a Federal offense." *See* 18 U.S.C. § 3771(e)(2)(A). Officer Jones was convicted of six counts of a sexual abuse of a ward,[23] which included acts that qualify under the definition of a "sexual act."[24] By recognizing that Ms. Wahpeta was "directly and proximately harmed" as result of Officer Jones's crimes when it invited her to give a victim impact statement concerning the abuse, the U.S. Attorney's office for the Northern District of California confirmed that Ms. Wahpeta meets the substantiation

---

[23] *See United States v. Jones*, No. 4:23-cr-00212-YGR, ECF No. 30 (N.D. Cal. Nov. 11, 2023).
[24] *See* ECF No. 146 (Ex. B) (Andrew Jones Plea Agreement). Officer Jones pled guilty to several instances of penetrating his victims' vulvas and mouths with his penis. *See, e.g.*, *id.* at 4–6. This qualifies as a "sexual act" under 18 U.S.C. § 2246(2)(A) and (B).

requirement. *See* U.S.S.G. § 1B1.13(b)(4).

Moreover, a "criminal conviction" is not the only way to meet the substantiation requirement. A finding of "misconduct" in "an administrative proceeding" also qualifies. *See* U.S.S.G. § 1B1.13(b)(4). According to the most recent PREA audit of FCI Dublin, all allegations of sexual abuse have been investigated.[25] As Ms. Wahpeta argued in her motion, when the BOP fired Officer Jones and Officer Pool based on their abuse, that termination qualified as an "administrative proceeding" that substantiated her abuse.[26]

Lastly, to the extent the Government suggests that an individual qualifies as a "victim of abuse" only if they are named in the criminal indictment, that is incorrect. Nothing in the Guidelines or in the amendment process that created the new substantiation requirement included or even contemplated such an overly narrow and harsh definition of "victim of abuse."[27] And for good reason. The purpose of the new amendments was to bring the Guidelines in line with the First Step Act,[28] a law that was designed to take the Government out of the driver's seat when it comes to reduction-in-sentence requests under § 3582(c)(1)(A).[29] Tethering an individual's victim status to prosecutorial discretion would be

---

[25] Bureau of Prisons, Prison Rape Elimination Act Audit Report 40 (2022), *available at* https://tinyurl.com/mrxejw84.

[26] *See* ECF No. 146 at 19–20.

[27] U.S. Sent'g Comm'n, *2022–2023 Proposed Amendments, Public Comment*, 88 Fed. Reg. 7180, at 391–92, *available at* https://tinyurl.com/mm9j3dzv.

[28] U.S. Sent'g Comm'n Public Meeting, U.S. Sent'g Comm'n 7–8 (Jan. 12, 2023) (statement of Hon. Carlton Reeves, Chairman of the U.S. Sentencing Commission and District Judge of the United States District Court for the Southern District of Mississippi), *available at* https://tinyurl.com/yp229cxd.

[29] U.S. Sent'g Comm'n Public Meeting, U.S. Sent'g Comm'n 12–13 (Feb. 23, 2023) (testimony of Mary Price, General Counsel of FAMM), *available at* https://tinyurl.com/5n8zfwjx.

directly at odds with the purpose of the First Step Act.

But, again, whether Ms. Wahpeta is required to meet the substantiation requirement and can do so is a question that goes to the substance of the reduction-in-sentence motion, and it is not properly litigated in a motion to stay.

### 4. Ms. Wahpeta is also excused from meeting the substantiation requirement because of the undue-delay exception.

Fourth, if Ms. Wahpeta's abuse has not been substantiated by the victim impact statement that she provided in federal court or the termination of Officers Jones and Pool, then Ms. Wahpeta is excused from meeting the requirement at all. Under the new policy statement, there is an exception to the substantiation requirement when a "conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding" has been "unduly delayed." *See* U.S.S.G. § 1B1.13(b)(4).

"Undue delay" is not defined. *See* U.S.S.G. § 1B1.13(b)(4). But when measuring whether substantiation is excused because of "undue delay," the most natural reading of the provision is that the Court must balance two things (1) the length of time that the substantiating proceedings are taking as compared to the time since the Government has been on notice of the victim's abuse and (2) the defendant's release date.

This interpretation of the measure of "undue delay" is necessary to prevent the DOJ from having unfettered control over who is entitled to move the court for a reduced sentence and to avoid serious conflicts of interest among divisions in the DOJ. The FCI Dublin cases are a perfect example of how a narrow interpretation of "undue delay" can deny access to relief entirely.

For example, once a criminal investigation into a FCI Dublin abuser has begun, the

guard's prosecutor then requests to stay civil[30] and administrative proceedings.[31] Once those proceedings are stayed,[32] the DOJ, through the guard's criminal case, is the only entity that can substantiate a victim's claim without substantial delay. Yet, at the same time, the DOJ is that victim's adversary in the often-parallel reduction-in-sentence proceedings.[33] The DOJ's decision-making thus operates in a way to impede victims from obtaining relief. Scholars have predicted this very situation would happen given the substantiation requirement.[34]

Just look at Ms. Wahpeta's case. The U.S. Attorney's Office for the Northern District of California made the decision to not name Ms. Wahpeta as a victim in a superseding indictment in Officer Jones's case. Perhaps it was because prosecutors "identified enough victims to move forward with an indictment."[35] There is no right to discovery, so it is unclear. But this is a practice that the DOJ has used in FCI Dublin prosecutions before.[36]

If being asked to speak at a guard's sentencing hearing does not qualify as "substantiation," then once Ms. Wahpeta is shut out of the prosecution by not being named

---

[30] Ex. B at ¶ 81 (Declaration of Jae Oh). Ms. Oh represents Ms. Wahpeta along with dozens of other FCI Dublin survivors in their civil claims.
[31] U.S. Sent'g Comm'n Public Meeting, U.S. Sent'g Comm'n, 25–26 (Feb. 23, 2023) (testimony of Marshall Miller, Principle Associate Deputy Attorney General of the United States, on behalf of the Executive Branch), *available* at https://tinyurl.com/5n8zfwjx.
[32] Ex. B at ¶ 81; *see id.*
[33] *See* Meredith Esser, *Who Bears the Burden When Prison Guards Rape*, 109 Iowa L. Rev. Online (forthcoming Winter 2024) (manuscript at 13), https://tinyurl.com/55yfjbv5.
[34] *Id.*
[35] *Id.*
[36] During the Warden Garcia prosecution, the Government was planning to call at least five unnamed victims at trial to testify to unindicted conduct. *See United States v. Garcia*, No. 4:23-cr-00429-YGR, ECF No. 145, at 4–5, 9 (N.D. Cal.). The defense argued that the unnamed victims could not be relied upon, and it requested an evidentiary hearing to make this credibility determination. *See id.* ECF No. 148, at 1–2. The Government decided to move forward without the unnamed victims' testimony. *See United States v. Garcia*, No. 4:21-cr-00429-YGR, ECF No. 168, at 9–10 (N.D. Cal. Mar. 28, 2023).

in an indictment, her only way to substantiate would be administratively or civilly. Ms. Wahpeta tried to do both. She retained a civil attorney, who has brought a claim against the Bureau of Prisons, Officer Jones, and Officer Pool.[37] But that claim is stayed.[38] Additionally, although Ms. Wahpeta has tried to amass evidence to show there has been an administrative finding against Officers Jones and Pool, she has been denied access to the information.[39]

The Government argues that "[t]here is no undue delay in this case, as the Substituted Motion for Compassionate Release was filed on October 31, 2023."[40] To the extent that the Government is referring to the language in the substantiation requirement, this misstates the law. The "undue delay" prong in § 1B1.13(b)(4) is about the substantiating proceedings and *not* the reduction-in-sentence proceedings. A plain text reading of the Guideline proves this point. The Guideline states in part that "the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless *such* proceedings are unduly delayed." U.S.S.G. § 1B1.13(b)(4) (emphasis added). The use of the word "such" shows "unduly delayed" relates to the substantiating proceedings.

The rulemaking history behind the guideline also proves this point. During the public hearings, the U.S. Sentencing Commission was concerned that if there was a substantiation requirement, it would delay reduction-in-sentence proceedings.[41] Commissioners asked

---

[37] *See* Ex. B at ¶ 81.
[38] *See id.*
[39] *See* Ex. C (FOIA Request and Appeal)
[40] ECF No. 149 at 3.
[41] *See, e.g.,* U.S. Sent'g Comm'n Public Meeting, *supra* note 29, at 38–39 (testimony of Robert Parker, Chief of the Appellate Division of the Criminal Division of the Department of Justice, on behalf of the Executive Branch), *available at* https://tinyurl.com/5n8zfwjx.

about how a criminal investigation impacts both civil and administrative proceedings after the DOJ recommended the substantiation requirement.[42] The U.S. Sentencing Commission responded by adopting the undue delay prong to ensure that the way these proceedings interacted would not impede victims. In short, a plain text and history of the Guideline show "undue delay" is not about the timing of the reduction-in-sentence proceedings.

### 5. If the Guideline applies, Ms. Wahpeta may not need to satisfy U.S.S.G. § 1B1.13(b)(4) because she satisfies U.S.S.G. § 1B1.13(b)(5).

Finally, although the Government presumes U.S.S.G. § 1B1.13(b)(4) applies to Ms. Wahpeta, it fails to consider whether she meets the criteria for release elsewhere in the new policy statement. She does. And a stay is not necessary to make out a showing under that provision: U.S.S.G. § 1B1.13(b)(5).[43]

Section 1B1.13(b)(5) states that a defendant qualifies for a reduced sentence if there are "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).

The U.S. Sentencing Commission stated that this is a more expansive catch-all and is not limited to just "near misses."[44] Although Ms. Wahpeta would qualify under (b)(5) with a "near miss" theory if the Court decides that she cannot meet the substantiation requirement,

---

[42] *Id.* at 38–39; *id.* at 22–23 (testimony of Marshall Miller, Principle Associate Deputy Attorney General of the United States, on behalf of the Executive Branch), *available* at https://tinyurl.com/5n8zfwjx.

[43] This argument was not included in Ms. Wahpeta's substituted motion for a reduced sentence since it is her position that the Guideline does not apply.

[44] U.S. Sent'g Guidelines Manual, at 4 (U.S. Sent'g Comm'n, 2023 Amendments), https://tinyurl.com/27u8uh2f .

she may also qualify under (b)(5) by arguing the need for adequate mental health care.[45] But, again, whether Ms. Wahpeta is required to meet a standard under the new Guideline and can do so is a question that goes to the substance of the reduction-in-sentence motion, and it is not properly litigated in a motion to stay.

**B. The Government has not met its burden under *Landis* because its request for a stay (1) is indefinite, and (2) its harm does not outweigh Ms. Wahpeta's.**

Even if the Court adopts the premise that U.S.S.G. § 1B1.13(b)(4) applies, the Government still has not met its burden under *Landis* because the stay is not temporally limited and the harm to Ms. Wahpeta substantially outweighs the harm to the Government.

**1. The requested stay is indefinite and must be denied because the other proceeding does not appear likely to resolve in a reasonable time.**

The Ninth Circuit has held that requests for indefinite *Landis* stays should generally be denied. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature." (citing *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000)). In *Dependable Highway*, the movant requested a stay pending an arbitration proceeding over the same matter but in London. *Id.* at 1063. The lower court granted the stay "pending the resolution of the London proceedings, including arbitration." *Id.* The Ninth Circuit reversed, holding that the there was "no indication that [the stay] would last only for a reasonable time." *Id.* at 1067. In fact, the stay was indefinite because the order provided "no specific deadline for when the stay will terminate." *Id.* at 1066–67. There was also no "indication that any arbitration proceedings ha[d] commenced in England—let alone concluded." *Id.* at 1067.

---

[45] *See* ECF No. 146 at 21–25.

This case is analogous. Here, the Government has requested to stay proceedings "until the findings of that full investigation are available for the Court to consider in its evaluation of this Motion."[46] There is "no specific deadline when the stay will terminate." *Id.* at 1066–67. Moreover, the Government has not proffered any information about the stage of the DOJ-OIG administrative proceedings, or that it has any say in those proceedings. In other words, if the stay were granted, both parties would be waiting for an unknown amount of time subject to the timeline of people who may be non-parties to this litigation. At least in *Dependable Highway*, one of the parties had the ability to schedule arbitration proceedings. *See Dependable Highway Exp., Inc.*, 498 F.3d at 1063. The stay here is inappropriately indefinite.

**2. The Government's hardship is minimal compared to the harm Ms. Wahpeta would suffer if the stay were granted.**

If the Court decides that the Government's stay is not indefinite, then the Court must balance the relative harms associated with the stay. *See Leyva, Ltd.*, 593 F.2d at 864.

First, the Government has not proffered any concrete harm it would suffer from proceeding with this case.[47] Nor could it. The U.S. Attorney's Office for the Northern District of California already designated Ms. Wahpeta a victim of Officer Jones when it invited her to give a statement at his sentencing hearing. Because it has already secured its conviction and sentence against Officer Jones there is no concern that it would need to disclose any privileged information about Officer Jones's case here.

The harm to the broader DOJ is also minimal. The DOJ has stated that allowing reduction-in-sentence proceedings to occur *before* criminal prosecutions could potentially

---

[46] ECF No. 149 at 4.

[47] *See generally* ECF No. 149.

14

impact any future criminal prosecution because of this timing's effect on victim credibility.[48]

Yet, once the Government vets a victim's claim and stops—as it has done with Ms.

Wahpeta—that victim should be able to move forward with their reduction-in-sentence

proceeding. That is particularly so when the prosecution has already concluded, as here.

Second, balanced against the lack of Government harm is the certainty that Ms.

Wahpeta will suffer. "*Landis* cautions that 'if there is even a fair possibility that the stay . . .

will work damage to some one else,' the party seeking the stay 'must make out a clear case of

hardship or inequity.'" *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255). The

Government's assertion that the harm to Ms. Wahpeta has been ameliorated because she has

been transferred from FCI Dublin to a new facility[49] reflects its misunderstanding as to the

seriousness of the trauma for survivors of sexual abuse in prison.

As Dr. Terry Kupers stated in his report evaluating Ms. Wahpeta's trauma, "the

harmful psychological effects of being in prison [after a sexual assault] include the

exacerbation of symptoms and disabilities related to prior traumas as well as their ongoing

reminders, and therefore mental health treatment in that setting is undermined and stymied

by the harmful effects of being in prison."[50] Granting the stay requires Ms. Wahpeta to

continue to sit in prison without adjudication of a claim that could potentially release her,

and the longer she sits in prison, the longer she must wait to receive effective treatment, and

---

[48] U.S. Sent'g Comm'n Public Meeting, *supra* note 29, at 12–13, 31 (statement of Robert Parker, Chief of the Appellate Division of the Criminal Division of the Department of Justice, on behalf of the Executive Branch), *available at* https://tinyurl.com/5n8zfwjx.
[49] ECF No. 149 at 3.
[50] ECF No. 146 (Ex. I-1 at 28) (Dr. Kupers Report).

the worse her condition gets.[51]

Moreover, not only will waiting harm Ms. Wahpeta physically, but it also harms her legally. Her claim for reduction-in-sentence may become moot if the stay drags beyond her release date. *See, e.g.*, *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (holding when a movant can no longer obtain relief, that renders their claim moot); *United States v. Chilipe-Escandon*, No. CR19-0109-JCC, 2020 WL 7714392, at *2 (W.D. Wash. Dec. 29, 2020) (applying *Foster* to reduction-in-sentence cases). Ms. Wahpeta has only 20 months left on her sentence. In short, the harm that Ms. Wahpeta will suffer while she waits for an unknown date in time far outweighs the harm that the Government faces.

### 3. Staying the case until the investigation is complete does not simplify legal or factual issues.

The second part of the *Landis* test also requires the Government to show that a stay is warranted because by allowing the independent proceedings to complete it will simplify a question of law or fact. *CMAX, Inc.*, 300 F.2d at 268. The Government implies that waiting for the independent investigation will simplify a question of fact: whether Ms. Wahpeta can substantiate her claim, as required by the new policy statement.[52]

Again, the policy statement does not apply. But even assuming it did, whether Ms. Wahpeta was raped by a BOP prison guard does not need substantiation. It has been established. The U.S. Attorney's Office for the Northern District of California asked her to give a victim impact statement, thus recognizing that she is one of Andrew Jones's victims.[53]

---

[51] *See* ECF No. 146 at 21–25.
[52] *See generally* ECF No. 149.
[53] *See supra* Part II.A.2.

Moreover, the Government's proposed end of the stay—when the findings of the DOJ-OIG investigation are available[54]—could still leave open the question of substantiation. The substantiation requirement is met when there is a finding of liability. *See* U.S.S.G. § 1B1.13(b)(4). There is no information that the DOJ-OIG investigation will necessarily result in a finding of liability or non-liability. If the Court grants this stay and the alleged investigation ends, then that investigation may not have actually answered the question from which the stay was born.

Finally, if the government is arguing that the alleged investigation is necessary regardless of whether the Guideline applies because more facts are needed, this reason too falls short of the Government's burden because the factual record right now is sufficient to verify what happened to Ms. Wahpeta is true. She was considered a victim in the Northern District of California, and surely should be considered a victim in the District of Arizona.

## II.   Conclusion

The Government's motion for a stay should be denied. Again, the Government's sole justification for the stay presumes that Ms. Wahpeta must meet a legal standard that does not apply. But even assuming it applies, she has met that standard through the DOJ's own criminal process or should be excused from doing so because of the DOJ's own conflicts of interest and undue delay. But setting aside the merits of Ms. Wahpeta's case—which should not be litigated in a motion to stay—the Government cannot meet its burden to stay this case indefinitely under *Landis* because the harm to Ms. Wahpeta substantially outweighs the Government's unspecified harm.

---

[54] *See* ECF No. 149 at 4.

Dated:          December 11, 2023

*s/ Alison K. Guernsey*
Alison K. Guernsey
Attorney for Ilene Wahpeta
Clinical Law Professor

## Certificate of Service

I certify that on December 11, 2023, I filed the foregoing using the CM/ECF System, thereby sending notification to: Raynette Logan, U.S. Attorney's Office.

*s/ Alison K. Guernsey*
Alison K. Guernsey

18