GARY M. RESTAINO
United States Attorney
District of Arizona

RAYNETTE M. LOGAN
Assistant U.S. Attorney
Arizona State Bar No. 016695
Email: Raynette.Logan@usdoj.gov
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-17-00041-003-PHX-GMS |
|---|---|
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |
| vs. | |
| Ilene Marie Wahpeta, | |
| Defendant. | |

The defendant orchestrated a home invasion robbery that resulted in a murder. Three victims were held at gunpoint in the living room of the home, while another victim fled out of a bedroom window with the defendant. The defendant has now filed her second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The United States requests that this Court deny the defendant's motion.[1] The defendant has not shown extraordinary and compelling reasons justifying a reduction of her sentence, nor that the § 3553(a) factors weigh in favor of a sentence reduction. The defendant's 10-year sentence remains appropriate in light of the defendant's involvement in this crime.

---

[1] The defendant filed two separate documents on this issue: 1) Defendant filed a pro se Motion for Compassionate Release on June 20, 2023 (CR 124 and 2). On October 31, 2023, defendant filed a Substituted Motion to Reduce Ms. Wahpeta's Sentence Based on Her Rape and Sexual Assault by BOP Officers at FCI Dublin.(CR 124).

## I. BACKGROUND

### A. Offense Conduct

On November 6, 2015, the defendant participated in a home invasion robbery that resulted in the shooting and death of one of the victims. (PSR ¶ 10) The defendant planned the robbery with her co-conspirators days before the incident, brought in two additional co-conspirators to help effectuate the robbery, was the lookout in the home prior to the robbery, and provided real-time information from the house to her co-conspirators regarding the location of individuals in the home just prior to the robbery. (Id.) On January 10, 2017, defendant was charged with Count 1: CIR-First Degree Murder, Aid and Abet; Count 2: CIR-Conspiracy to Commit Robbery and Residential Burglary; Count 3: CIR-Robbery, Aid and Abet; Count 4: CIR-Residential Burglary; and Counts 5-7: Use of a Firearm During a Crime of Violence, Aid and Abet. (CR 1.)

On April 19, 2017, the defendant pled guilty to Count 6 of the Indictment, Use of a Firearm During a Crime of Violence, to wit: Robbery. The defendant entered into a written plea agreement, with a stipulation that defendant shall be sentenced between 8 and 12 years' confinement. (CR 33, 34.) On October 30, 2017, the defendant was sentenced to 120 months' confinement. (CR 80, 81.)

### B. Motion for Compassionate Release

On September 17, 2020, defendant filed a Motion for Compassionate Release, pursuant to 18 U.S.C. §3582(c)(1)(A). In this first Motion, the defendant argued insufficiency of the evidence and arguments relevant to the 3553(a) factors. The defendant also minimized her role in the offense. The Court denied her request for release on March 25, 2021. (CR 123.)

The defendant is currently housed at Waseca FCI, Minnesota. The defendant has a projected release date of June 27, 2025. The defendant requested a reduction in sentence through the BOP on May 9, 2023, which was supplemented by her attorney, Alison K. Guernsey, on August 3, 2023. As of November 22, 2023, BOP has not made a decision as to the defendant's administrative request for release. The defendant also filed a Tort Claim

to the U.S. Department of Justice on May 16, 2023, for the same underlying claims she has made in this Motion for Compassionate Release. The request for damages was $10,000,000. (Exh. 1)

The defendant filed a pro se Motion for Compassionate Release on June 20, 2023. (CR. 124.) She states that she was a victim of sexual assault at FCI Dublin by kitchen officers Andrew Jones and Patrick Pool from March 2019 through June 2022. (*Id*. at 2.) She claims that these men sexually abused her on many occasions and that she suffered severe trauma and emotional distress, physical injuries and other permanent injuries and damages. (*Id*.) She also claims to have been denied proper psychological care and treatment. (*Id*.) The defendant said that Jones was abusing other women, A.N., and R.C. (*Id*.) She states that the first time Officer Jones sexually assaulted her was in November 2021 and the second time was in January 2022. The defendant states in 2021, Officer Pool told her to "touch this" and motioned towards his crotch. (*Id*. at 3.) The defendant states that she did not report these assaults, but she was put into the Special Housing Unit (SHU) on March 16, 2022, because other women reported him. (*Id*.) She claims that this was retaliation, and that she was unable to report the sexual assault. (*Id.* at 5.)

On October 31, 2023, the defendant filed a "Substituted Motion to Reduce Ms. Wahpeta's Sentence Based on Her Rape and Sexual Assault by BOP Officers at FCI Dublin." This Substituted Motion largely reiterates the claim the defendant previously filed in her pro se Motion.

On July 13, 2023, in the Northern District of California, an Information was filed against Andrew Jones for the sexual abuse of three inmates at FCI Dublin, C.V., J.L., and R.C. (Exh. 2.) On August 17, 2023, Jones pled guilty pursuant to a plea agreement wherein he admitted to the sexual abuse of federal inmates C.V. (between July 1, 2020 and December 31, 2020), J.L. (between March 1, 2021 and June 30, 2021), and R.C. (between March 1, 2021 and June 30, 2021), while serving as a correctional officer. (Exh. 3.) On November 15, 2023, Jones was sentenced to 96 months' confinement and 10 years' supervised release. (Exh. 4.) At the sentencing, Jones's defense counsel objected to the

statements made by A.N. and the defendant on the basis that they were not statutory victims. (Exh. 5, Record of Transcript, 11/15/2023, pg. 23.) The defense stated that the government conceded in an email to the court that their statements are inconsistent and not sufficiently reliable to be considered. (*Id*.) Government's counsel clarified that the government did not call the defendant at the sentencing of Jones or otherwise present evidence of their alleged abuse, in part because the government could not sufficiently corroborate their statements to allow the government to present their allegations to the court for consideration at sentencing. (*Id*.)

The defendant is not a named victim in the charges against Jones, nor did Jones admit to sexually abusing defendant. Furthermore, other witnesses in this investigation consistently contributed the three named victims of the Information (C.V., J.L., and R.C.) filed against Jones, and A.N, as victims of sexual abuse. A.N. was a close friend of the defendant while they were both inmates at FCI Dublin and both A.N and defendant were in the SHU together for approximately 3 months.

The investigation into Andrew Jones began in 2022. Since A.N. was named by other inmates as a victim of sexual abuse, she was interviewed on May 19, 2022. (Exh. 6.) A.N denied any sexual or physical contact with Jones and denied seeing any sexual or physical contact between Jones or Pool and any inmates. (*Id*.)

Following this interview, the defendant wrote two letters regarding the investigation. She wrote a letter to her mother, dated May 29, regarding A.N. being interviewed by investigators. (Exh. 7.) She informs her mother about being in the SHU for three months and about the investigation. (*Id*.) She writes about how her friend spoke with those investigators and denied having a relationship with one of her bosses. (*Id*.) She contemplates getting a lawyer because she wonders if talking will get her home. (*Id*.) The defendant writes about another friend and that friend's lookout who talked and got to go home early. (*Id*.) The defendant writes about whether she should forget about everything she "saw or had to lookout for." (*Id*.) The defendant writes about going home, but she is concerned about being labeled a snitch. (*Id*.) The defendant also wrote a letter to her dad,

dated May 29. (Exh. 8.)  The defendant also tells him about how her friend was interviewed by the FBI, and how they told her friend that they knew the friend was in a relationship with Jones. (*Id*.)  The defendant said that the friend denied everything.  The defendant said she is there (in the SHU) because "they supposedly think I know a lot that's been going on in that kitchen Ive (sic) been working there for years. So they wanna ask me some questions but I don't know." (*Id*.)  She complains about being kept in the SHU and is hopeful to get out of jail soon. (*Id*.) In neither letter does the defendant tell her parents she is personally a victim of sexual abuse, but rather she talks about her friend being a victim and possibly witnessing what happened to others.

On June 2, 2022, the FBI interviewed the defendant regarding her knowledge of sexual abuse at FCI Dublin. (Exh. 9.)  The defendant told the investigators that she never saw anything and never heard anything inappropriate during her time in food service.  (*Id*.)  She denied any knowledge of the matters under investigation even when confronted with her handwritten letters.  (*Id*.)  The defendant was thereafter moved to FCI Waseca.

Following the defendant's filing of the Motion for Compassionate Release, the defendant participated in a second interview with investigators on September 13, 2023. (Exh. 10.)  The defendant made sexual abuse allegations against Jones.  (*Id*.) On September 27, 2023, A.N. submitted to a second interview with investigators. (Exh. 11.) She also provides information regarding her sexual abuse allegations against Jones. (*Id*.)  What is notable between the two statements is how remarkably similar the actual sexual conduct is described by these two women.  A.N. denies telling the defendant about the sexual abuse, although the defendant states that she knew of the abuse of A.N. in her statement. While the defendant makes claims of sexual abuse against Jones and Pool, there have been no charges filed against Officer Patrick Pool.

Defendant frequently receives medical care while incarcerated with the BOP. Defendant's medical records reflect readily-available medical care. (Exh. 12.)

# ARGUMENT

## I. Introduction

The defendant seeks release from confinement based on her claims that she was sexually assaulted at FCI Dublin, that she has received ineffective mental health treatment following her claims of sexual assault, and that she is a different person than when she orchestrated the home invasion robbery and requests release pursuant to the 18 U.S.C. § 3553(a) factors.

## II. Legal Framework for Compassionate Release

District courts generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" 18 U.S.C. § 3582(c)(1). The Director of the Bureau of Prisons may make a motion under this section. Following the implementation of the First Step Act in 2019, an inmate may also file a motion subject to the exhaustion requirement described below.

Compassionate release is both a drastic and permanent remedy; therefore, it is subject to several strict statutory conditions. The defendant bears the burden of proving she meets all elements of eligibility for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022) ("it was [the defendant]'s burden to establish his eligibility for compassionate release…").

### A. Administrative exhaustion is required.

First, a district court can consider a defendant's request for compassionate release only after the defendant makes an administrative request and waits thirty days for a response. Specifically, the statute provides a defendant can file a motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.

§ 3582(c)(1)(A); *see also*, *e.g.*, *United States v. Weidenhamer*, No. CR-16-01072-PHX-ROS, 2020 WL 1929200, at *2 (D. Ariz. Apr. 21, 2020) ("There is no indication in the statutory text … [that] Congress meant to confer on the court the authority to waive exhaustion.") ("*Weidenhamer II*"); *United States v. Tomlinson*, No. CR-18-08374-002-PCT-DWL, 2020 WL 1935522, at *1 (D. Ariz. Apr. 22, 2020) (quoting *Weidenhamer II*).

Here, the defendant made an administrative request to BOP on May 9, 2023, which was supplemented by her attorney, Alison K. Guernsey, on August 3, 2023. The defendant has therefore satisfied the administrative exhaustion requirement.

**B.** **Extraordinary and compelling reasons are required.**

Second, even if the exhaustion requirement is met, a district court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. § 3553(a)]" and if the court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[2]

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)." 28 U.S.C. § 994(a)(2)(C). Congress instructed the Commission, in promulgating policy statements regarding Section 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

---

[2] Alternatively to the "extraordinary and compelling reasons" requirement, § 3582(c)(1)(A)(ii) also allows for compassionate release where "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community . . . ." This subsection is inapplicable to the defendant's Motion.

The Commission did not promulgate an applicable policy statement for more than two decades. In 2006, the Commission promulgated Sentencing Guidelines § 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28, 254, 28, 256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *see also United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases). As a result, and in the absence of a binding policy statement, the courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i).

In 2022, the Senate confirmed seven nominees to the Sentencing Commission. Having regained a quorum, and after public notice and comment, the Commission voted on April 5, 2023 to promulgate amendments to the Guidelines Manual, including to Section 1B1.13's policy statement.  88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); *see also*

Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr.").[3]  The amendments to Section 1B1.13 render the policy statement applicable to defendant-filed motions.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; *see* 28 U.S.C. § 994(p). The amendments moved the description of permissible bases for a reduction from the commentary to the policy statement itself, and expanded the list of specified extraordinary and compelling reasons that can warrant sentence reductions. *See* U.S.S.G. § 1B1.13.  The Amended U.S.S.G. §1B1.13(b)(4) provides that a court may reduce a term of imprisonment where the defendant is a victim of abuse:

> The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of sexual abuse involving a "sexual act"…that was committed by or at the direction of a correctional officer, an employee or contractor of the Bureau of Prisons…who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case or a finding in an administrative proceeding, unless such proceedings are unduly delayed, or the defendant is in imminent danger.

District courts have noted that even amidst the COVID-19 pandemic, which was "an exceptional event, . . . compassionate release remains 'rare' and 'extraordinary,' and courts routinely deny claims from inmates absent a showing of truly exceptional circumstances." *United States v. West*, No. 3:17-cr-00075, 2021 WL 1785077, at *2 (D. Or. May 5, 2021) (citing *United States v. Hamman*, No. 3:16-cr-185, 2020 WL 3047371, at *5 (D. Or. June 8, 2020)); *United States v. Davis*, 2:13-cr-00046, 2021 WL 829367, at *2 (E.D. Tenn. Mar. 4, 2021) ("[t]he simple fact is that compassionate release presents

---

[3] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

defendants with a high bar to hurdle, and that high bar is too lofty for the vast majority of [defendants]").

Even for defendants who are statutorily eligible, compassionate release is a rare and extraordinary remedy, within a district court's discretion to deny. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding district court did not abuse its discretion by denying compassionate release despite defendant's eligibility for that relief). *United States v. Mangarella*, No. 06-CR-151, 2020 WL 1291835, at *2–*3 (W.D.N.C. Mar. 16, 2020) (citation omitted); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("most courts treat compassionate release 'due to medical conditions [a]s . . . a rare event."). This reluctance to expansively apply compassionate release is grounded in a concern that any broader application would yield significant sentencing disparities. *United States v. Ebbers*, 432 F.Supp.3d 421, 430 (S.D.N.Y. 2020).

**III.    The defendant's motion should be denied on substantive grounds.**

This Court should deny the defendant's motion because she fails to demonstrate extraordinary and compelling reasons justifying a sentence reduction. Further, the § 3553(a) factors weigh heavily against the defendant's proposed immediate release from confinement.

**A.     The defendant has not shown extraordinary and compelling reasons to warrant a sentence reduction under the applicable policy statement.**

**1. U.S.S.G. §1B1.13(b)(4) factors are not met for release as a victim of sexual assault**

The defendant does not qualify for release pursuant to U.S.S.G. §1B1.13(b)(4). For this provision to apply, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed, or the defendant is in imminent danger. Defendant has not met her burden. While defendant claims to be a victim of sexual abuse by Officers Jones and Pool, she was never a named victim in the charge or the plea agreement. Jones has never admitted to abusing the defendant, nor have the witnesses

provided any corroboration of defendant's accounting of abuse, unlike the named victims of Officer Jones in the Information and plea agreement.  Officer Pool has not been charged with a crime, and again, there have not been any findings by any authority to support the defendant's claim.  The defendant has been moved to FCI-Waseca.

At the inception of the investigation into Officer Jones' alleged abuses, the defendant provided no information regarding any sexual abuse.  In the summer of 2022, defendant knew of her friend's sexual abuse by Officer Jones. Even when writing to her parents, her main concern was getting out of confinement early, not reporting what she had seen.  Also, defendant never mentions being a victim of abuse, but rather that she witnessed the abuse.  In the summer of 2022, when first given the opportunity to disclose to the FBI what she had seen, she did not claim to have been abused. The lack of corroboration and conflicting stories were significant enough that the government chose not to present the defendant's allegations to the court sentencing Jones.

On these facts, defendant has not met her burden to show that she should receive compassionate release.

**2.  Medical care**

Defendant claims to not have received the appropriate mental health care needed as a victim of sexual abuse, but defendant did not make her allegations until late May of this year.  She could not have received counseling or treatment for something she did not disclose.  As noted in her medical records, she is regularly seen by medical professionals at the BOP.  In her Substituted Motion, Defendant notes that mental health counseling is available and that there is a plethora of programming available to her in the BOP. Defendant knows how to access the facilities and makes requests.  There are no requests noted in the records received for mental health counseling that were denied.   Defendant claims her release from custody is her only chance to effectively receive treatment without even seeking the treatment and mental health care available within the BOP.

### 3. Rehabilitation

The defendant claims to be a different person than when she was sentenced. She attaches her certificates and participation in rehabilitative programs within the BOP. Indeed, it is commendable that the defendant has been involved with her own rehabilitation, as well as others, in confinement. But rehabilitation alone is insufficient to warrant relief. 28 U.S.C. § 994(t). Rehabilitation may be considered in combination with other factors, but a district court correctly denies compassionate release where a defendant's other reasons are insufficient. *See, e.g.*, *United States v. Sepulveda*, 34 F.4th 71, 77 (1st Cir. 2022) ("The district court, . . . having rejected each of the defendant's other proffered reasons for compassionate release, correctly determined that rehabilitation alone could not be an extraordinary and compelling reason for compassionate release."). Such is the case here, where the defendant's purported claim of sexual abuse and lack of perceived mental health care do not warrant relief.

### B. Additionally, and independently, the § 3553(a) factors weigh against a sentence reduction or release.

In addressing the § 3553(a) factors, the defendant raises many of the same reasons cited above as extraordinary and compelling, such as mental health treatment and her rehabilitation. Accordingly, the government's earlier arguments apply. Even if the defendant were otherwise eligible for a sentence reduction, however, this Court should deny the Motion because additional § 3553(a) factors independently weigh against it. *See, e.g.*, *United States v. Acosta*, No. CR-05-01319-001, 2021 WL 1790773, at *1-5 (D. Ariz. May 5, 2021) (denying motion for compassionate release despite finding extraordinary and compelling circumstances because § 3553 factors weighed against release). These factors are discussed below.

### 1. The seriousness of the offense, just punishment, and adequate deterrence.

The defendant was the architect of a home invasion robbery that resulted in the murder of one of the victims. She planned and helped execute a dangerous and violent crime. This crime involved the take down of an entire home with multiple victims in the home being held at gunpoint. This was not a spur-of-the-moment crime, but rather a

robbery which took days of planning, the recruitment of other participants by the defendant, and her active participation during the execution of the robbery. A 10-year sentence was appropriate at the time of sentencing to reflect the seriousness of the offense, to provide just punishment, and to provide deterrence to the defendant and others who think to participate in such violent actions for selfish gain.

**2.     The defendant remains a danger to the community.**

The newly amended § 1B1.13 also requires a court to find that a defendant seeking compassionate release does not pose a danger to the safety of any other person or to the community before granting a sentence reduction. USSG §1B1.13(a)(2). This defendant continues to pose a danger to the community. *See United States v. Castillo*, 2021 WL 1085028, at *5-6 (C.D. Calif. May 14, 2021) (considering the dangerousness of the defendant under the § 3553(a) factors); *Acosta*, 2021 WL 1790773, at *1-5 (same); *United States v. Gotti*, No. 02-CR-743, 2020 WL 497987, at *6 (S.D.N.Y. Jan. 15, 2020) (release was inappropriate regardless of extraordinary and compelling circumstances because defendant posed a continuing danger to the public); *accord United States v. Urso*, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019).

The record here precludes a finding that defendant is no longer a danger. To the contrary, defendant still poses a very real danger to the community. Defendant planned and helped execute a home invasion robbery. She was a lookout during this robbery and provided real time information of the people in the home. During the investigation of the murder, the defendant tried to deflect her participation in the crime by acting as a victim of the robbery. (PSR ¶ 5 and Exh. 13.)

The defendant's release plan, which lists a proposed address and states she will be employed, is not compelling or extraordinary and does not allay these concerns. *See United States v. Guerrero*, No. 21-30101, 2021 WL 5985552, at *1 (9th Cir. Dec. 17, 2021) ("Having determined that [the defendant] had failed to establish extraordinary and compelling reasons for release, the district court was not required to consider the 18 U.S.C. § 3553(a) factors, including…arguments concerning his proposed release plan[.]"). This § 3553(a) factor weighs strongly against a sentence modification.

## CONCLUSION

For all the foregoing reasons, this Court should deny the defendant's motion.

Respectfully submitted this 22nd day of January, 2024.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> *s/Raynette M. Logan*
> RAYNETTE M. LOGAN
> Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant: Alison K. Guernsey, *Attorney for Defendant*

*s/Stephanie Ludwig*
U.S. Attorney's Office